[No. S049304. Aug. 26, 1997.]

In re MANUEL G., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
MANUEL G., Defendant and Appellant.

806

## COUNSEL

Dennis L. Cava and Howard C. Cohen, under appointments by the Supreme Court, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Esteban Hernandez, Janelle Marie Boustany, Meagan J. Beale and Niki Cox Shaffer, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**GEORGE, C. J.**—The juvenile court declared minor Manuel G. a ward of the court after finding that he had violated Penal Code section 69[1] by attempting by means of threats to deter a deputy sheriff from performing his duties. The Court of Appeal stated that one element of an offense under section 69 is that the officer must have been engaged in the lawful performance of his or her duties at the time the offense was committed. After determining that the deputy illegally had detained the minor before the minor threatened the deputy, the Court of Appeal reversed the juvenile court's finding that the minor had violated section 69.

As we shall explain, we disagree with the Court of Appeal's determination on two separate grounds. First, whether or not the deputy unlawfully had detained the minor at the time the minor threatened the deputy, the juvenile court's finding that the minor violated section 69 may be upheld on the ground that the minor's threat reasonably could be interpreted as intended to deter the deputy and other law enforcement officers from lawfully performing, *in the future*, a duty imposed upon them by law with regard to the investigation of the minor and his fellow gang members; as we shall see, such a threat—attempting to deter an officer from the lawful performance of his or her duties in the future—constitutes a violation of section 69 without regard to whether the officer is engaged in the lawful performance of his or her duties at the time the threat is made. Second, even if the minor's threats

---

[1]Further undesignated statutory references are to the Penal Code.

are construed as an attempt to deter or prevent the deputy from continuing the conduct in which the officer was then engaged (rather than as an attempt to deter future conduct), we conclude that, contrary to the determination of the Court of Appeal, the record, viewed in the light most favorable to the judgment rendered by the juvenile court, supports a finding that the deputy had not detained the minor illegally—but instead was acting lawfully—at the time the minor threatened the deputy. Accordingly, we conclude that the judgment of the Court of Appeal must be reversed.

I

The Orange County District Attorney filed a petition to declare the minor a ward of the court (Welf. & Inst. Code, § 602), charging him with attempting by means of threats to deter and prevent an executive officer from performing a duty imposed by law, in violation of section 69. At the jurisdictional hearing on the petition, Deputies Brian Sims and Dominick Montalbano of the Orange County Sheriff's Department testified concerning the events that gave rise to the charge against the minor.

Deputy Sims testified that in the course of investigating a gang-related shooting, he attempted to locate active gang members in order to obtain additional information concerning the case. While patrolling on the evening of April 19, 1994 (three days after the shooting), he saw the minor walking on the street. Sims recognized the minor as a gang member and broadcast over the police radio that he was making a gang-related "pedestrian check." After Sims got out of his patrol car, the minor continued walking toward him. The deputy asked something like, "Hey, can I talk to you?," and indicated he wanted to speak with the minor about the shooting. The minor stated he had no information. Sims continued to speak to the minor and asked him whether he knew of the circumstances involving the case. Sims did not draw his gun or deter or stop the minor from continuing what he was doing. In response to Sims's questioning, the minor stated that he was going to contact "Internal Affairs," presumably to complain about the deputy's conduct. The minor said he was tired of the Orange County Sheriff's Department contacting him.

Sims testified that immediately following the minor's statement about contacting internal affairs, the minor said, "Me and my home boys are going to start killing you and your friends." Sims informed the minor that making any kind of threat against him was against the law. The minor continued making threats, such as: "Hey, you better be watching your back. And we're going to start knocking you guys off. You guys aren't so bad. I'm not afraid of dying. You guys are the ones that should be afraid of dying."

Deputy Montalbano testified that he heard Sims's radio broadcast that he was "doing a pedestrian stop." Montalbano arrived at the scene two to five minutes later. He encountered the minor sitting on the curb and Sims standing nearby, talking to the minor. The minor seemed agitated and said to Sims, "I'm tired of you guys fucking with us, and you better watch out, we're going to start knocking you guys off." At that point, Sims arrested the minor and seated him in the back of the patrol car. Montalbano then asked the minor why he was so angry with Sims. The minor again remarked, "We're tired of being fucked with. We're going to start knocking you guys off."

The minor did not make a motion to suppress evidence (§ 1538.5), nor did he present any evidence of his own, at the jurisdictional hearing. At the conclusion of the hearing, the juvenile court sustained the allegations of the petition. At the dispositional hearing, the court continued the minor's wardship and placed him on probation, ordering that he serve 180 days in a juvenile facility.

The minor appealed, arguing that there was insufficient evidence to support the juvenile court's finding that the minor had violated section 69, because the prosecutor had not presented any evidence demonstrating that the minor had the specific intent to interfere with an officer's performance of his or her duties. On its own initiative at oral argument, the Court of Appeal for the first time raised the issue whether Deputy Sims's encounter with the minor was justified. In its initial opinion, the Court of Appeal noted but did not address the minor's argument regarding the sufficiency of the evidence; rather, it considered the fundamental issue in the case to be whether the encounter was consensual or instead amounted to an illegal detention. Relying upon *People* v. *Wilkins* (1993) 14 Cal.App.4th 761, 776-777 [17 Cal.Rptr.2d 743], the appellate court stated that a violation of section 69 requires "as an element that the officer at the time of the offense be engaged in the lawful performance of his duties." The Court of Appeal concluded that the record demonstrates the encounter was not consensual and, because Sims lacked an articulable suspicion that the minor had been involved in the prior shooting, the ensuing detention was unjustified and therefore unlawful. Thus, according to the Court of Appeal, Sims was not engaged in the lawful performance of his duties at the time the minor threatened the deputy, and therefore the minor's threats did not constitute a violation of section 69.

The Attorney General petitioned for rehearing on the grounds that no question concerning whether the minor had been detained—legally or illegally—was ever proposed or briefed by any party in the case, and that the record failed to support the Court of Appeal's determination that the minor

was being detained at the time he threatened the deputy. After the Court of Appeal denied rehearing, we granted the Attorney General's petition for review and transferred the cause to the Court of Appeal with directions to reconsider the matter pursuant to Government Code section 68081.[2] In supplemental briefing filed in the Court of Appeal, the minor argued that the detention was unlawful and, further, that he was denied the constitutional right to effective assistance of counsel because his trial counsel did not move to suppress evidence on the ground that Sims illegally had detained the minor. In addition, the minor repeated his contention that the evidence was insufficient to establish he had the specific intent to deter an officer's performance of his or her duties imposed by law.

The Court of Appeal's opinion after rehearing repeated in large part its previous opinion. With regard to the nature of Deputy Sims's encounter with the minor, the Court of Appeal stated: "[A]lthough Sims testified the encounter was consensual, it is beyond cavil the detention was illegal: Manuel was stopped solely because he was a gang member; Sims had no articulable suspicion Manuel had a connection with or knew about the prior gang shooting; and, Sims forced Manuel to sit on the curb and continue answering questions even after Manuel said he knew nothing about the shooting and did not want to answer any further questions." Having determined that Sims was not engaged in the lawful performance of his duties at the time the minor made the threatening remarks, the Court of Appeal again concluded that the threats did not constitute a violation of section 69 and therefore that the judgment rendered by the juvenile court must be reversed. In light of this conclusion, the Court of Appeal did not analyze or fully discuss the minor's further contention that there is insufficient evidence to support the juvenile court's finding that he violated section 69 because the evidence fails to establish that he acted with the specific intent to interfere with Sims's performance of his duties. Nor did the appellate court consider the minor's claim that he was denied his constitutional right to the effective assistance of trial counsel.

We again granted the Attorney General's petition for review, which raised the sole issue whether the deputy illegally had detained the minor before the threats were made. Subsequently, we requested and obtained supplemental briefing from the parties on the issue whether the prosecution must prove, as

---

[2] Government Code section 68081 provides: "Before the Supreme Court, a court of appeal, or the appellate department of a superior court renders a decision in a proceeding other than a summary denial of a petition for an extraordinary writ, based upon an issue which was not proposed or briefed by any party to the proceeding, the court shall afford the parties an opportunity to present their views on the matter through supplemental briefing. If the court fails to afford that opportunity, a rehearing shall be ordered upon timely petition of any party."

one element of a violation of section 69, that the officer was engaged in the lawful performance of his or her duties when the threat was made. We shall address both issues, beginning with the more general question relating to the elements of section 69.[3]

## II

Section 69 provides: "Every person who attempts, by means of any threat or violence, to deter or prevent an executive officer from performing any duty imposed upon such officer by law, or who knowingly resists, by the use of force or violence, such officer, in the performance of his duty, is punishable by a fine not exceeding ten thousand dollars ($10,000), or by imprisonment in the state prison, or in a county jail not exceeding one year, or by both such fine and imprisonment."

■ The statute sets forth two separate ways in which an offense can be committed. The first is attempting by threats or violence to deter or prevent an officer from performing a duty imposed by law; the second is resisting by force or violence an officer in the performance of his or her duty. (*In re M.L.B.* (1980) 110 Cal.App.3d 501, 503 [168 Cal.Rptr. 57].) Because the minor is accused only of attempting by threats to deter or prevent an officer from performing a duty imposed by law, we are concerned here only with the first type of offense under section 69.

A threat, unaccompanied by any physical force, may support a conviction for the first type of offense under section 69. (*In re M.L.B., supra*, 110 Cal.App.3d at pp. 503-504.) To avoid the risk of punishing protected First Amendment speech, however, the term "threat" has been limited to mean a

---

[3]The minor's brief on the merits in this court renews his claim of ineffective assistance of counsel. He did not, however, raise this issue in his answer to the petition for review, and his brief therefore improperly addresses the issue. (Cal. Rules of Court, rules 28(e)(5), 29.2(b), 29.3(c).) In any event, we find it appropriate to allow the Court of Appeal to consider the issue in the first instance on remand. (See also *People* v. *Mendoza Tello* (1997) 15 Cal.4th 264, 266-267 [62 Cal.Rptr.2d 437, 933 P.2d 1134] [claims of ineffective assistance of counsel generally should be raised in a habeas corpus proceeding, not on appeal].) We note that the minor has advanced the same claim in a petition for writ of habeas corpus filed in this court, which we shall transfer to the Court of Appeal to be considered in conjunction with the minor's appeal on remand.

The minor's brief on the merits in this court also addresses another issue that is not properly before us. The minor contends that a comment made by the juvenile court in ruling on an objection establishes that the court misunderstood the elements of the offense with which the minor was charged and demonstrates that the court failed to find all the required elements of the offense in sustaining the allegations of the petition. The minor did not raise this issue in his briefs in the Court of Appeal, however, or in his answer to the petition for review. We believe it is appropriate for the Court of Appeal, on remand, to determine whether the minor should be permitted to raise the issue in that court.

threat of unlawful violence used in an attempt to deter the officer. (*People* v. *Superior Court (Anderson)* (1984) 151 Cal.App.3d 893, 895-898 [199 Cal.Rptr. 150]; cf. *City of Houston* v. *Hill* (1987) 482 U.S. 451, 460-467 [107 S.Ct. 2502, 2508-2513, 96 L.Ed.2d 398] [ordinance prohibiting verbal interruptions of police officers, if not limited to unprotected "fighting words," is unconstitutionally overbroad].) The central requirement of the first type of offense under section 69 is an attempt to deter an executive officer from performing his or her duties imposed by law; unlawful violence, or a threat of unlawful violence, is merely the means by which the attempt is made. (*People* v. *Superior Court (Anderson)*, *supra*, 151 Cal.App.3d at p. 897.)

 The long-standing rule in California and other jurisdictions is that a defendant cannot be convicted of an offense against a peace officer " '*engaged in . . . the performance of . . .* [his or her] *duties*' " unless the officer was acting lawfully at the time the offense against the officer was committed. (*People* v. *Gonzalez* (1990) 51 Cal.3d 1179, 1217 [275 Cal.Rptr. 729, 800 P.2d 1159], original italics; see also *People* v. *Simons* (1996) 42 Cal.App.4th 1100, 1109 [50 Cal.Rptr.2d 351].) "The rule flows from the premise that because an officer has no duty to take illegal action, he or she is not engaged in 'duties,' for purposes of an offense defined in such terms, if the officer's conduct is unlawful. . . . [¶] . . . [T]he lawfulness of the victim's conduct forms part of the corpus delicti of the offense." (*People* v. *Gonzalez*, *supra*, 51 Cal.3d at p. 1217.)

*People* v. *Gonzalez*, *supra*, 51 Cal.3d 1179, 1217-1223, applied this rule to the offense of aggravated assault against a peace officer engaged in the performance of his or her duties (§ 245, subd. (c)) and to the special circumstance of knowingly and intentionally killing a peace officer engaged in the performance of his or her duties (§ 190.2, subd. (a)(7)).[4] If, however, a statute defining an offense does not require that the officer be engaged in the performance of his or her duties, the officer need not have been acting lawfully at the time of the offense. Thus, in *People* v. *Simons*, *supra*, 42 Cal.App.4th at pages 1108-1110, the Court of Appeal determined that the defendant violated section 417.8, prohibiting the drawing or exhibiting of a deadly weapon with the intent to prevent an arrest, whether or not the arrest

---

[4]*People* v. *Gonzalez*, *supra*, 51 Cal.3d at page 1217, noted other examples of application of the rule. (*People* v. *Curtis* (1969) 70 Cal.2d 347, 354-356 [74 Cal.Rptr. 713, 450 P.2d 33] [battery upon a peace officer engaged in the performance of his or her duties]; *People* v. *Henderson* (1976) 58 Cal.App.3d 349, 356-357 [129 Cal.Rptr. 844] [assault with a deadly weapon upon a peace officer engaged in the performance of his or her duties]; *Jackson* v. *Superior Court* (1950) 98 Cal.App.2d 183, 188-189 [219 P.2d 879] [obstructing a public officer in the discharge, or attempted discharge, of a duty of his or her office (resisting arrest)]; *Sparks* v. *United States* (6th Cir. 1937) 90 F.2d 61, 63-65 [brandishing weapons and physically resisting marshal executing search warrant].)

was lawful.[5] The court reasoned that had the Legislature intended the section to apply only to brandishing a weapon to prevent a *lawful* arrest, it would have added the "engaged in duty" language used in similar statutes. (*Simons, supra*, 42 Cal.App.4th at pp. 1109-1110.)

■ The question in the present case is whether section 69's attempt-to-deter offense includes a requirement that the officer be engaged in his or her duty at the time a threat is made. In concluding such a requirement exists, the Court of Appeal relied solely upon *People* v. *Wilkins, supra*, 14 Cal.App.4th 761, a case in which the defendant violently resisted the police officers' attempt to arrest him. Although the defendant threatened to kill at least two of the officers, he was charged under section 69 only with "forcibly resisting a peace officer in the performance of his duties" and was convicted of that offense. (*Wilkins, supra*, 14 Cal.App.4th at pp. 767-769.) On appeal, the defendant challenged a jury instruction defining "lawful arrest." Before addressing that argument, the Court of Appeal stated: "Violation of . . . section 69 . . . require[s] as an element that the officer at the time of the offense be engaged in the lawful performance of his duties. This means, where the offense is committed upon an officer effecting an arrest, the arrest must have been lawful." (*Id.* at p. 776, fn. omitted.)

The Court of Appeal in the present case cited this passage from *Wilkins* as authority for its conclusion that, in order for the minor to have violated section 69 by threatening Deputy Sims, the deputy must have been engaged in the lawful performance of his duties at the time the threat was made. *People* v. *Wilkins, supra*, 14 Cal.App.4th 761, is distinguishable from this case, however, because *Wilkins* considered only section 69's prohibition against resisting by force or violence an officer in the performance of his or her duty. By defining the offense in terms of using force to *resist* an officer "in the performance of" his or her duty, the second part of section 69 necessarily assumes that the officer is engaged in such duty when resistance is offered. Therefore, *Wilkins* properly stated that, for purposes of the offense set forth in the second part of section 69, the officers must have been acting lawfully when the defendant resisted arrest. (*People* v. *Gonzalez, supra*, 51 Cal.3d at p. 1217.)

The first type of offense under section 69, however, prohibits the use of threats of violence to *attempt to deter or prevent* an officer *from* performing *any duty* imposed by law. Although the statute applies only when the

---

[5]Section 417.8 provides: "Every person who draws or exhibits any firearm, whether loaded or unloaded, or other deadly weapon, with the intent to resist or prevent the arrest or detention of himself or another by a peace officer shall be imprisoned in the state prison for two, three, or four years."

conduct that the threat is intended to deter is a "duty imposed upon such officer *by law*"—i.e., only when the conduct that the defendant attempts to deter is *lawful* conduct to be performed by the officer in connection with his or her duties as an officer—the statutory language does not require that the officer be engaged in the performance of his or her duties at the time the threat is made. Instead, the plain language of the statute encompasses attempts to deter *either* an officer's *immediate* performance of a duty imposed by law *or* the officer's performance of such a duty at some time *in the future.*[6] Thus, for example, a person who telephones an off-duty officer at his or her home and threatens to kill the officer if he or she continues to pursue a lawful investigation the following day or week may be convicted of the first type of offense under section 69, even though the officer was not engaged in the performance of his or her duties at the time the threat was made.

Of course, when a defendant threatens an on-duty officer in an attempt to deter or prevent the officer from continuing to perform the specific conduct in which the officer is then currently engaged, and the officer's conduct is unlawful, the defendant would not violate the statute, because he or she would not have attempted to deter the officer's performance of lawful conduct. When a defendant threatens an officer in an attempt to deter the officer from performing a duty at some later time, however, only the future performance of such duty must be lawful, and the circumstance that the officer may not have been acting in the lawful performance of his or her duties—or may not have been engaged in his or her official duties at all—at the time the threat is made, would not preclude a finding that the defendant violated section 69. In sum, under the first type of offense prohibited by section 69, the relevant factor is simply the lawfulness of the official conduct that the defendant (through threat or violence) has attempted to deter, and not the lawfulness (or official nature) of the conduct in which the officer is engaged at the time the threat is made.

The minor seeks to avoid this construction of section 69 by relying upon the statute's legislative history. He observes that when section 69 was adopted as part of the original Penal Code in 1872, an annotation to the section referred to a previous version of the statute and several out-of-state cases. Those authorities required that, in order to establish the commission of an offense, it must be established that the officer was engaged in the lawful performance of his or her duties when the defendant obstructed or resisted such performance. Therefore, according to the minor, the current version of section 69 must contain a similar requirement.

---

[6] Section 69, however, does not reach threats made only in response to or in retaliation for an officer's *past* performance of his or her duties.

As explained, however, the statutory language with which we are concerned is clear, and therefore it is unnecessary to resort to indicia of the intent of the Legislature. (*Lungren* v. *Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299].) Moreover, nothing in the legislative history cited by the minor is inconsistent with our interpretation of section 69. The prior version of the statute and the authorities upon which the minor relies concern the obstruction or interference with an officer in the performance of his or her duties—the second type of offense under section 69. The minor's authorities do not address the type of offense here at issue: a *threat* made in an *attempt to deter* performance of a duty imposed by law. Thus, the legislative history upon which the minor relies simply confirms California's long-standing rule that a defendant cannot be convicted of an offense against a peace officer engaged in the performance of his or her duties unless the officer was acting lawfully at the time of the offense. (*People* v. *Gonzalez*, *supra*, 51 Cal.3d at p. 1217; *People* v. *Wilkins*, *supra*, 14 Cal.App.4th at p. 776.) These authorities do not reveal any legislative intent to impose the same requirement for an offense consisting of threats made in an attempt to deter an officer from the performance of a lawful duty.

The minor further contends that the first type of offense under section 69 is limited to an attempt to deter an officer from lawfully executing process or performing similar duties such as making an arrest. The minor observes that the "duty" requirements in the two types of offenses set forth in section 69 are phrased differently from one another. The first offense involves attempting to deter performance of "any duty imposed upon such officer by law," whereas the second offense concerns obstructing or resisting an officer "in the performance of his duty." The minor maintains that the Legislature would not have used different language in setting forth the two duty requirements if it did not intend different meanings. To ascertain such meaning, the minor looks to certain of section 69's predecessor statutes that prohibited interference with an officer's lawful execution of some process or order of the court. According to the minor, the phrase "any duty imposed . . . by law" in the initial portion of section 69 is limited to such narrowly defined duties, while the "duty" referenced in the second portion of section 69 refers to any and all lawful conduct in which an officer might be engaged during the course of his or her employment.

Again, because the language of the statute is clear, we need not resort to legislative history to interpret it. The phrase "any duty imposed upon such officer by law" reasonably cannot be limited solely to execution of process and similar duties, because the law requires and authorizes officers to perform numerous other duties. Indeed, the term "executive officer" as used in section 69 is not limited to *peace* officers such as police officers or deputy

sheriffs, but extends to other executive officers who would have no occasion to engage in the execution of court process or similar duties described by the minor. (E.g., *People* v. *Superior Court* (*Anderson*), *supra*, 151 Cal.App.3d 893, 895 [threat to kill mayor is sufficient to support charge of violating section 69]; see also *People* v. *Kerns* (1935) 9 Cal.App.2d 72, 73-75 [48 P.2d 750] [junior epidemiologist-bacteriologist employed by State Board of Public Health to perform inspections of aviaries is "executive officer" within the meaning of section 68, prohibiting bribery of such officers]; Gov. Code, § 1001 [defining "civil executive officers" to include numerous public employees not engaged in law enforcement].) If we were to accept the minor's interpretation, we would be writing the term "executive officer" out of the statute. Contrary to the minor's argument, we discern no legislative intent to distinguish among different types of duties simply because the statute uses the phrase "performing any duty imposed . . . by law" in the first portion of section 69, and the phrase "in the performance of his duty" in the second portion.[7]

The interpretation of section 69 that we have set forth above furthers the statute's purpose of prohibiting the use of threats or violence as a tool for attempting to interfere with executive action. As the Court of Appeal stated in *People* v. *Superior Court* (*Anderson*), *supra*, 151 Cal.App.3d at page 897, "[T]he act is not excused by the fact that the actor does not presently have the executive officer in the sights of his gun." Executive officers, including peace officers investigating criminal activity, must feel free to pursue their lawful duties without fear of violent retaliation.

We proceed to apply this interpretation of section 69 to the facts of this case. The record indicates that the minor's threats to kill Sims and his fellow officers reasonably could be construed as an attempt to deter the Orange County Sheriff's Department's future investigation of gang-related activities. In response to Sims's questions concerning the shooting, the minor said he was tired of the department contacting him. The minor's threats were not directed solely at Sims, but also toward others in the department. Thus, he stated: "Me and my home boys are going to start killing you and your friends." "I'm tired of you guys fucking with us, and you better watch out, we're going to start knocking you guys off." Taken in context, these statements suggest that the minor felt frustrated at being contacted in the course of the department's investigations, and that his threats constituted an attempt to deter deputies from initiating further contacts with him or other gang members. The minor does not contend, and there is nothing in the

---

[7]We note also that *People* v. *Buice* (1964) 230 Cal.App.2d 324, 335-336 [40 Cal.Rptr. 877] rejected a similar argument that the second type of offense defined in section 69 is directed only against interference with an officer serving a writ or other process of the court.

record to suggest, that any future investigation of, or contact with, gang members by the department would be unlawful.

Therefore, even assuming for the sake of argument that the record establishes (as the Court of Appeal determined) that the minor was unlawfully detained by Sims before the minor uttered these threats, the juvenile court still properly could find that the minor violated section 69. Accordingly, we conclude that the Court of Appeal erred in reversing the juvenile court's finding on the ground that section 69 necessarily required Sims to have been engaged in the lawful performance of his duties at the time the minor made the threats in question.[8]

## III

■ Furthermore, even if the minor's threats are construed solely as an attempt to deter Sims from contemporaneously continuing to perform those actions in which the deputy was engaged during his encounter with the minor, we conclude the Court of Appeal's ruling cannot be sustained, because the record contains substantial evidence to support a finding that the encounter was consensual and that Sims was engaged in the lawful performance of his duties at the time the minor threatened him. As noted, in juvenile court the minor did not raise any question with regard to the legality of Sims's conduct preceding the minor's arrest, and, indeed, the minor also did not raise this issue in his initial briefing in the Court of Appeal. It was only after the Court of Appeal raised the point on its own motion at oral argument that the parties addressed the issue. The Attorney General maintains that, on the present record, the Court of Appeal improperly found that the minor's threats against the deputy sheriff were made during an illegal detention. As we shall explain, we agree with the Attorney General's position.

---

[8]As noted, the Court of Appeal's disposition of the appeal rendered it unnecessary for that court to address the minor's argument that there is insufficient evidence to support his conviction under section 69 because the prosecution evidence fails to establish that he acted with the intent to prevent or deter, rather than simply to express his displeasure with, the deputy's actions. The appellate court briefly stated in a footnote that "had [Deputy] Sims been acting in the lawful performance of his duties, Manuel's threats would have supported a finding of a violation of section 69. [Citations.]" Contrary to the Attorney General's argument, we do not believe this brief statement may be considered to be a discussion or resolution of the minor's argument that he lacked the specific intent necessary to establish a violation of section 69. The Court of Appeal neither analyzed the minor's argument nor mentioned the authority upon which the minor relied. Under these circumstances, we believe it is appropriate for the Court of Appeal to consider that issue in the first instance on remand, and we therefore express no opinion as to whether the evidence is sufficient to establish that the minor made threats constituting an attempt to deter present or future duties imposed by law.

■ Police contacts with individuals may be placed into three broad categories ranging from the least to the most intrusive: consensual encounters that result in no restraint of liberty whatsoever; detentions, which are seizures of an individual that are strictly limited in duration, scope, and purpose; and formal arrests or comparable restraints on an individual's liberty. (*Wilson* v. *Superior Court* (1983) 34 Cal.3d 777, 784 [195 Cal.Rptr. 671, 670 P.2d 325]; *In re James D.* (1987) 43 Cal.3d 903, 911-912 [239 Cal.Rptr. 663, 741 P.2d 161].) Our present inquiry concerns the distinction between consensual encounters and detentions. Consensual encounters do not trigger Fourth Amendment scrutiny. (*Florida* v. *Bostick* (1991) 501 U.S. 429, 434 [111 S.Ct. 2382, 2386, 115 L.Ed.2d 389].) Unlike detentions, they require no articulable suspicion that the person has committed or is about to commit a crime. (*Wilson* v. *Superior Court, supra,* 34 Cal.3d at p. 784.)

■ The United States Supreme Court has made it clear that a detention does not occur when a police officer merely approaches an individual on the street and asks a few questions. (*Florida* v. *Bostick, supra,* 501 U.S. at p. 434 [111 S.Ct. at p. 2386].) As long as a reasonable person would feel free to disregard the police and go about his or her business, the encounter is consensual and no reasonable suspicion is required on the part of the officer. Only when the officer, by means of physical force or show of authority, in some manner restrains the individual's liberty, does a seizure occur. (*Ibid.*; *Wilson* v. *Superior Court, supra,* 34 Cal.3d at pp. 789-790.) "[I]n order to determine whether a particular encounter constitutes a seizure, a court must consider all the circumstances surrounding the encounter to determine whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter." (*Florida* v. *Bostick, supra,* 501 U.S. at p. 439 [111 S.Ct. at p. 2389].) This test assesses the coercive effect of police conduct as a whole, rather than emphasizing particular details of that conduct in isolation. (*Michigan* v. *Chesternut* (1988) 486 U.S. 567, 573 [108 S.Ct. 1975, 1979, 100 L.Ed.2d 565].) Circumstances establishing a seizure might include any of the following: the presence of several officers, an officer's display of a weapon, some physical touching of the person, or the use of language or of a tone of voice indicating that compliance with the officer's request might be compelled. (*United States* v. *Mendenhall* (1980) 446 U.S. 544, 554 [100 S.Ct. 1870, 1877, 64 L.Ed.2d 497] (opn. of Stewart, J.); *In re James D., supra,* 43 Cal.3d at p. 913, fn. 4.) The officer's uncommunicated state of mind and the individual citizen's subjective belief are irrelevant in assessing whether a seizure triggering Fourth Amendment scrutiny has occurred. (*In re Christopher B.* (1990) 219 Cal.App.3d 455, 460 [268 Cal.Rptr. 8].)

The Court of Appeal determined that the minor was unlikely to have believed he was free to leave, because it found that Deputy Sims had ordered

the minor to sit on the curb before the minor threatened Sims. In assessing the validity of the Court of Appeal's determination, we are guided by familiar rules of appellate review. ■ When reviewing a judgment, an appellate court "must determine 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' [Citation.] '[T]he court must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence . . . such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' [Citation.] We ' "presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence." ' [Citation.]" (*People* v. *Davis* (1995) 10 Cal.4th 463, 509 [41 Cal.Rptr.2d 826, 896 P.2d 119], original italics.)

■ The record contains substantial evidence from which the juvenile court could have found that the minor threatened Deputy Sims during a consensual encounter. Sims's uncontradicted testimony indicated that after the deputy got out of his patrol car, the minor continued walking toward him. Sims asked whether they could talk, and the minor responded to his questions. Sims did not draw his gun or deter or stop the minor from continuing what he was doing. Approaching the minor in a public place and asking him questions were not actions in themselves constituting coercive police conduct that would lead a reasonable person to believe that he or she was not free to leave. (*Florida* v. *Bostick*, *supra*, 501 U.S. at p. 434 [111 S.Ct. at p. 2386].) Sims additionally testified that immediately after the minor indicated he had no information and was going to contact internal affairs, the minor threatened to kill the deputy and his friends. Nothing in the record suggests that before that point Sims had, by words, gestures, or other coercive conduct, restrained the minor in any manner. Montalbano's testimony that he found the minor sitting on the curb when Montalbano arrived at the scene a few minutes after receiving the radio call does not establish that the minor made the threats only after Sims told him to sit there. Sims's *uncontradicted* testimony indicates otherwise, and Sims legally could have detained the minor after the threats.

The minor argues that Sims's testimony is "highly improbable" and incredible when considered in light of the entire record, and that therefore no reasonable trier of fact could find that the minor consented to the encounter before making any of the threats. The minor relies upon Montalbano's statement that Sims used the term "pedestrian stop" in the radio broadcast, as well as what the minor describes as Sims's continued "incessant interrogation" after the minor told Sims that he had no information. According to the minor, his warning to Sims that he would call internal affairs if Sims did not

leave him alone proved that the minor did not believe he was free to walk away.

Even if Sims stated in his radio broadcast that he was making a pedestrian stop, as Montalbano testified, that statement does not contradict Sims's testimony that the encounter remained consensual until the minor threatened him. The broadcast was made before Sims got out of his patrol car and thus could not establish the nature of an encounter that had not yet occurred. Furthermore, Sims's continued questioning of the minor does not suggest that the encounter was a detention. As we have explained, there is no evidence in the record suggesting that Sims, by words, gestures, or other coercive conduct, restrained the minor in any manner before the minor threatened to kill Sims. Moreover, even if the testimony upon which the minor relies *might* support a finding that the encounter *was* a detention, we must view the evidence in the light most favorable to the judgment below. (*People* v. *Hawkins* (1995) 10 Cal.4th 920, 955 [42 Cal.Rptr.2d 636, 897 P.2d 574].) If the circumstances reasonably justify the juvenile court's finding, we cannot reverse merely because the circumstances also might support a contrary finding. (*People* v. *Williams* (1971) 5 Cal.3d 211, 214 [95 Cal.Rptr. 530, 485 P.2d 1146].) This rule applies equally to express and implied findings. (See *Denham* v. *Superior* Court (1970) 2 Cal.3d 557, 564 [86 Cal.Rptr. 65, 468 P.2d 193] [all presumptions are indulged to support the judgment regarding matters as to which the record is silent].) Properly applying that standard in this case, we cannot say the deputies' uncontradicted testimony did not furnish substantial evidence that the encounter was consensual.

■ The minor asserted for the first time at oral argument that the legality of his encounter with Deputy Sims must be analyzed under article I, section 13 of the California Constitution. He contends the requirement that the officer be engaged in lawful conduct is an element of the substantive offense under section 69, and that the California Constitution's "Truth-in-Evidence" provision (Cal. Const., art. I, § 28, subd. (d)), requiring that questions involving the exclusion of evidence be resolved under federal law applying the Fourth Amendment (*In re Lance W.* (1985) 37 Cal.3d 873, 896 [210 Cal.Rptr. 631, 694 P.2d 744]), is therefore inapplicable. Thus, according to the minor, even if his encounter with Sims was not a detention under the Fourth Amendment, California law establishes that Sims illegally detained the minor within the meaning of the California Constitution.

The minor relies upon *People* v. *Bower* (1979) 24 Cal.3d 638, 643 [156 Cal.Rptr. 856, 597 P.2d 115], which states: "In California, courts have found a 'clear' detention in a situation where an officer 'went to the telephone

booth [the defendant was using], and asked defendant his name and several questions.' (*People* v. *Moore* (1968) 69 Cal.2d 674, 678, 683 [72 Cal.Rptr. 800, 446 P.2d 800] [overruled on other grounds in *People* v. *Thomas* (1977) 19 Cal.3d 630, 641, fn. 8 (139 Cal.Rptr. 594, 566 P.2d 228)].)" Both *Bower* and *People* v. *Moore* (1968) 69 Cal.2d 674 [72 Cal.Rptr. 800, 446 P.2d 800] are distinguishable from the present case, however, because in each there was testimony that the officers forcibly detained the defendants. Moreover, the officers in those cases suspected that the defendants personally were involved in criminal activity. As *Bower* explains, this court previously had concluded that "[a] detention . . . occurs whenever an officer accosts an individual on suspicion that the person 'may be personally involved in some criminal activity. . . .'" (*People* v. *Bower, supra,* 24 Cal.3d at p. 643, citing *In re Tony C.* (1978) 21 Cal.3d 888, 895 [148 Cal.Rptr. 366, 582 P.2d 957].) In this case, Deputy Sims's testimony indicates that he approached the minor only to ask him whether he had information concerning a prior shooting. The minor himself argues that Sims lacked any articulable suspicion that the minor had committed or was committing any crime. If an officer wishes "to question the person *not as a suspect but merely as a witness* to a crime," no detention has occurred. (*In re Tony C., supra,* 21 Cal.3d at p. 895, italics added; *People* v. *Turner* (1994) 8 Cal.4th 137, 180 [32 Cal.Rptr.2d 762, 878 P.2d 521] [no detention in violation of the California Constitution occurred when the officer's conduct did not control the defendant's movement and the officer did not suspect the defendant personally was involved in criminal activity].) Therefore, even if the minor's untimely argument were properly before us, it is without merit.

■ In concluding that the minor was detained illegally before he made any threats, the Court of Appeal relied upon a remark made by the juvenile court judge during the proceedings on the minor's motion for a new hearing. The minor contends that the remark amounted to a permissible inference that the court reasonably drew from the evidence. In moving for a new hearing, defense counsel asserted that the court improperly had considered an inadmissible report regarding the minor's gang involvement. The court responded: "All this—all the gang stuff has nothing to do with—he just threatened a police officer, and all I thought was the police officer testified—and you correct me if I'm wrong—that they wanted to talk to him about a gang shooting, that they stopped him, they discussed it, he said, 'I don't have anything to say to you,' something to that effect, and [the] officer said, 'I want to talk to you. Blah, blah, blah, blah, blah. Sit down on the curb.' And that's when the dam broke." The court then indicated it had admitted Sims's testimony concerning the minor's gang involvement but had not read the report in question. The minor's attorney responded that if the court had not read and considered the report, she would forego the argument.

Taken in context, the judge's offhand remark cannot be treated justifiably as a finding or inference that Sims ordered the minor to sit on the curb before the minor had made any threats, or that the minor threatened Sims only after he had been so ordered. Rather, the judge's comment was included in a quick summary of evidence intended to demonstrate that the judge did not consider the minor's gang involvement, and the report referring to it, as particularly relevant to the offense at issue. The judge advised defense counsel to correct him if his account of the testimony was incorrect, suggesting that the judge was not purporting to make findings with regard to the evidence. Because the minor never raised the detention issue in the juvenile court, the prosecution had no reason to seek to correct the informal statement made by the judge, which was at odds with the uncontradicted evidence received. The Court of Appeal improperly relied upon the judge's offhand remark as the basis for overturning the judgment.

Although the juvenile court made no express finding as to the nature of the initial encounter between the minor and Sims, as we have seen there is substantial evidence in the record to support the conclusion that it was consensual, and that the minor threatened Sims in the course of that consensual encounter. Because, under established appellate practice, an appellate court must "view the evidence in the light most favorable to the judgment below, and . . . ' "presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence" ' [citations]" (*People* v. *Rich* (1988) 45 Cal.3d 1036, 1081 [248 Cal.Rptr. 510, 755 P.2d 960]), the Court of Appeal erred in determining that the record established that the minor had threatened the deputy sheriff only after being subjected to an illegal detention.

## IV

The judgment of the Court of Appeal is reversed, and the case is remanded to that court for consideration of the additional contentions raised on appeal.

Mosk, J., Kennard, J., Baxter, J., Werdegar, J., Chin, J., and Brown, J., concurred.