Filed 8/19/14  P. v. Wesley CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| THE PEOPLE, | C073912 |
| Plaintiff and Respondent, | (Super. Ct. No. SF118744A, SF122830A) |
| v. | |
| FREDRICK WESLEY, | |
| Defendant and Appellant. | |

In November 2012, in case No. SF118744A (narcotics case), the trial court heard and denied defendant Fredrick Wesley's  motion to suppress evidence.  In January 2013, he pled no contest to possession of cocaine base for sale.  In exchange, a related count and enhancing allegations were dismissed.

In March 2013, in case No. SF122830A (firearm case), the trial court heard and denied defendant's motion to substitute counsel.  (*People v. Marsden* (1970) 2 Cal.3d 118.)  In May 2013, defendant pled no contest to possession of a firearm by a convicted felon.  In exchange, three related counts and enhancing allegations were dismissed.

1

Defendant was sentenced to prison for concurrent terms of four years in the narcotics case and two years in the firearm case. He obtained a certificate of probable cause.

On appeal, defendant contends: (1) his suppression motion should have been granted because the officers detained him unreasonably before he admitted that he was on parole subject to a search condition; and (2) his *Marsden* motion should have been granted because he showed that his right to counsel was substantially impaired. We affirm.

## FACTS

### Narcotics Case

On October 22, 2011, about 7:00 p.m., Stockton Police Officer Jeffrey Pope contacted defendant near the intersection of Hunter and Church Streets. Defendant was found to be in possession of about 11 grams of rock cocaine.

### Firearm Case

On January 23, 2013, around 11:20 a.m., defendant was contacted in the area of Sonora and Hunter Streets in Stockton and was found to be in possession of a .40-caliber Smith & Wesson handgun. Defendant was prohibited from possessing a firearm as a result of his 2009 conviction of possession for sale of cocaine.

## DISCUSSION

### I

### Defendant's Motion To Suppress Evidence

Defendant contends the trial court erred in upholding the warrantless detention and search that yielded the rock cocaine. He claims Officer Pope and his partner, Stockton Police Officer Frank McCutcheon, detained him unreasonably before he admitted to the officers that he was on parole subject to a search condition. In defendant's view, it was arbitrary, capricious, and harassing for the officers to focus their suspicions upon him simply because, unlike other people in this high-crime area, defendant was " 'clean' " and

2

appeared to have " 'showered.' " Defendant further contends that "blading" him in public, then putting him face down in the street to look into his pants and to his buttocks was arbitrary, capricious, and harassing. As a result, the trial court should have suppressed the narcotics found in the search. We are not persuaded.

Defendant's suppression motion initially was heard simultaneously with the preliminary examination. Officer Pope was the only witness. He testified as follows:

On October 22, 2011, at 7:00 p.m., Officers Pope and McCutcheon were on patrol in a marked police car as part of the "Gang Street Enforcement Team." They were patrolling an area of Stockton known for its "high level of narcotics trafficking and activity." The officers were familiar with the area because each had five years' experience with narcotics cases.

As the officers turned onto Hunter Street, Officer Pope noticed two people walking by who first looked up at the police car and then looked down quickly. The officers made a U-turn and headed back to the area, planning to speak to the people. As they approached, the officers saw two other people "squatting next to a building on the west side of the street." One of those people, later identified as defendant, did not seem to fit in because he was wearing clean clothes and appeared to have showered recently, whereas most people on that block were transients with dirty clothes and an unwashed appearance. When the police car approached, defendant and his companion stood up and began walking away, which further raised Officer Pope's suspicions.

The officers contacted the first two people they had seen and spoke with them for less than a minute before realizing they "weren't really up to anything." The officers circled the block and located defendant and his companion at Hunter and Sonora Streets. Because it was getting dark, Officer Pope, who was in the front passenger seat, turned his spotlight toward the area where the men were standing and asked "[w]hat's going on" in a conversational tone of voice. The officers did not activate the patrol car's emergency lights, siren, or public address system. One of the men replied, "Nothing. We're just

3

walking." From the patrol car in the middle of the street, Officer Pope then asked the men if they were on probation or parole. Defendant did not reply, and the other man said he was not. Officer Pope looked at defendant and asked again if he was on probation. Defendant replied, "No, I'm on parole." Based on this response, Officer Pope got out of the car and approached defendant.

Defendant told Officer Pope that he was on parole for "possession." Officer Pope initiated a "parole compliance search" by having defendant clasp his hands behind his head. Officer Pope placed one hand on defendant's clasped hands and used his other hand to conduct a patsearch for weapons and searched defendant's pockets. Officer Pope found no weapons but noticed that defendant was standing with his legs and feet close together. After repeated requests by Officer Pope, defendant gradually spread his legs far enough apart so that Officer Pope could search defendant's lower body by running the "blade" of his hand up defendant's legs toward his buttocks. Officer Pope explained that often people conceal contraband "between their butt cheeks" to prevent officers from finding it. As Officer Pope "bladed" defendant's buttocks, he felt a "foreign object or foreign substance" in the area, which prompted him to handcuff defendant.

Officer Pope placed defendant in the patrol car and told him he would be taken to the police department for a strip search. Defendant placed both of his handcuffed hands down the back of his pants. The officers got into the backseat and tried to pull defendant's hands out of his pants.

Officer McCutcheon radioed for a backup unit. When that unit arrived, defendant was removed from the patrol car and placed face down in the street while the backseat was searched for narcotics. Officer Pope looked down the back of defendant's pants to see if anything was there. No object was found in either location. Defendant was returned to the patrol car and taken to the police department.

4

At the police station, defendant's pants and underwear were removed and he was told to bend forward. When he did so, a clear plastic baggie fell to the floor. The baggie contained six smaller baggies that held an aggregate 11.77 grams of rock cocaine.

On cross-examination, Officer Pope acknowledged that he did not confirm defendant's statement that he was on parole until after he was arrested. But the officer said he never had anyone claim to be on parole when he or she were not. Officer Pope explained that he did not shine his spotlight directly on defendant and that he usually aims it "just either at the ground in front of them or in the area so [he] can see what's going on a little bit better. More for officer safety than anything else."

In denying the motion to suppress, the magistrate stated that United States Supreme Court cases allow police officers to conduct searches in cases, such as this, in which a consensual encounter yields information that the person is on probation or parole.

Defendant renewed his suppression motion in the trial court pursuant to Penal Code section 1538.5, subdivision (i). The trial court reviewed the transcript of the preliminary examination and the parties' moving papers before hearing arguments on the motion on November 20, 2012. After reviewing the evidence from the transcript, the trial court ruled as follows:

"The evidence supports the conclusion made by the magistrate that the defendant, prior to stating that he was on parole[, was] free to disregard the officers' questions and walk away. The officers did not display or use weapons or make any show of force until the defendant admitted being on parole. The officers did not exit their vehicle or touch or restrain the defendant. The officers did not block the defendant's path or chase after him. They did not walk briskly toward him. The officers did shine a vehicle spotlight in the defendant's vicinity due to oncoming darkness, but did not yell at him or command him to do anything. [¶] There is no indication that the officers spoke to the defendant in a forceful or hostile manner. [Moreover], immediately preceding the encounter with the

5

defendant, the officers had contact with other people on the same block and drove away after a brief communication.  [¶]  Approaching the defendant in a public place and asking him questions were not actions constituting coercive police conduct that would lead a reasonable person to believe that he or she was not free to leave."

The trial court found that the search was conducted for the proper purpose of parole supervision.  The court rejected defendant's contentions, not renewed on appeal, that there was insufficient evidence of his parole status and that the search violated Penal Code section 3040.

"A defendant may move to suppress evidence on the ground that '[t]he search or seizure without a warrant was unreasonable.'  [Citation.]  A warrantless search is presumed to be unreasonable, and the prosecution bears the burden of demonstrating a legal justification for the search.  [Citation.]  'The standard of appellate review of a trial court's ruling on a motion to suppress is well established.  We defer to the trial court's factual findings, express or implied, where supported by substantial evidence.  In determining whether, on the facts so found, the search or seizure was reasonable under the Fourth Amendment, we exercise our independent judgment.' " (*People v. Redd* (2010) 48 Cal.4th 691, 719.)

"Police contacts with individuals may be placed into three broad categories ranging from the least to the most intrusive:  consensual encounters that result in no restraint of liberty whatsoever; detentions, which are seizures of an individual that are strictly limited in duration, scope, and purpose; and formal arrests or comparable restraints on an individual's liberty.  [Citations.]  Our present inquiry concerns the distinction between consensual encounters and detentions.  Consensual encounters do not trigger Fourth Amendment scrutiny.  [Citation.]  Unlike detentions, they require no articulable suspicion that the person has committed or is about to commit a crime." (*In re Manuel G.* (1997) 16 Cal.4th 805, 821.)

6

"The United States Supreme Court has made it clear that a detention does not occur when a police officer merely approaches an individual on the street and asks a few questions. [Citation.] As long as a reasonable person would feel free to disregard the police and go about his or her business, the encounter is consensual and no reasonable suspicion is required on the part of the officer. Only when the officer, by means of physical force or show of authority, in some manner restrains the individual's liberty, does a seizure occur. [Citations.] '[I]n order to determine whether a particular encounter constitutes a seizure, a court must consider all the circumstances surrounding the encounter to determine whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter.' [Citation.] This test assesses the coercive effect of police conduct as a whole, rather than emphasizing particular details of that conduct in isolation. [Citation.] Circumstances establishing a seizure might include any of the following: the presence of several officers, an officer's display of a weapon, some physical touching of the person, or the use of language or of a tone of voice indicating that compliance with the officer's request might be compelled. [Citations.] The officer's uncommunicated state of mind and the individual citizen's subjective belief are irrelevant in assessing whether a seizure triggering Fourth Amendment scrutiny has occurred." (*In re Manuel G.*, *supra*, 16 Cal.4th at p. 821.)

On the facts presented at the preliminary examination and accepted by the trial court, the court correctly concluded that defendant's encounter with the officers was consensual until he acknowledged that he was on parole. It is undisputed that the officers had not used any "physical force," and the evidence does not show a sufficient "show of authority." (*In re Manuel G.*, *supra*, 16 Cal.4th at p. 821.)

Defendant relies primarily upon *People v. Garry* (2007) 156 Cal.App.4th 1100 (*Garry)*, in which the relevant show of authority consisted of the officer turning on the patrol car's spotlight that "illuminated [the] defendant;" the officer exiting the car, which

7

was " 'probably' " about 35 feet away from the defendant; the officer walking " 'briskly' " toward the defendant and closing the gap in " 'two and a half, three seconds' "; and the officer expressing his desire to "confirm" defendant's claim that he lived at a nearby house.  (*Id*. at p. 1104.)  *Garry* held the officer's "testimony makes clear that his actions, taken as a whole, would be very intimidating to any reasonable person. [The officer] testified that after only five to eight seconds of observing [the] defendant from his marked police vehicle, [the officer] bathed [the] defendant in light, exited his police vehicle, and, armed and in uniform, 'briskly' walked 35 feet in 'two and a half, three seconds' directly to him while questioning him about his legal status.  Furthermore, [the officer] immediately questioned [the] defendant about his probation and parole status, disregarding [the] defendant's indication that he was merely standing outside his home.  In other words, rather than engage in a conversation, [the officer] immediately and pointedly inquired about [the] defendant's legal status as he quickly approached.  We think only one conclusion is possible from this undisputed evidence:  that [the officer's] actions constituted a show of authority so intimidating as to communicate to any reasonable person that he or she was ' "not free to decline [his] requests or otherwise terminate the encounter." ' "  (*Id.* at pp. 1111-1112, fn. omitted.)

Here, in contrast, there was no evidence that defendant was "bathed . . . in light." (*Garry*, *supra*, 156 Cal.App.4th at p. 1111.)  Officer Pope did not shine his spotlight directly on defendant; per Officer Pope's custom, he would have aimed it at the ground in front of defendant "so [Officer Pope] can see what's going on a little bit better.  More for officer safety than anything else."  Nor did Officer Pope approach defendant on foot, briskly or otherwise; rather, he remained seated in the patrol car.  Officer Pope began questioning defendant in a conversational tone before asking him about his probation and parole status.  And nothing in the record suggests that Officer Pope disregarded the assertion by one of the men that they were "just walking."

8

*Garry* distinguished *People v. Franklin* (1987) 192 Cal.App.3d 935, 938-940 (*Franklin*), in which a police officer spotted the defendant, Franklin, walking down the street in a seedy neighborhood at midnight wearing a coat that seemed too warm for the weather conditions. When the officer put his patrol car's spotlight on Franklin, Franklin tried to hide a white bundle he was carrying. The officer stopped his car directly behind Franklin and began to use his radio, and Franklin approached the car. The officer got out and met him in the area of the headlights. Without the officer's initiating any conversation, Franklin repeatedly asked, " 'What's going on?' " Rejecting Franklin's claim that he had been detained as a result of these actions, the appellate court observed that "the officer did not block appellant's way; he directed no verbal requests or commands to appellant. Further, the officer did not alight immediately from his car and pursue appellant. Coupling the spotlight with the officer's parking the patrol car, appellant rightly might feel himself the object of official scrutiny. However, such directed scrutiny does not amount to a detention." (*Id.* at p. 940.)

*Franklin* suggests that Officer McCutcheon's parking of the patrol car and Officer Pope's shining of the spotlight do not by themselves elevate the encounter to a detention. Neither does Officer Pope's mere act of asking a few questions so elevate the encounter. (See *In re Manuel G.*, *supra*, 16 Cal.4th at p. 821.) Defendant's argument that a reasonable person would not "feel free to continue to ignore the officers and simply walk away" after being questioned must be directed to a court higher than this one. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)

Where an encounter is consensual, no reasonable suspicion is required on the part of the officer. (*In re Manuel G.*, *supra*, 16 Cal.4th at p. 821.) Thus, the officers were entitled to commence their consensual encounter with defendant simply because, unlike most people in the area, he appeared to be "clean" and "showered."

After defendant admitted his parole status, Officer Pope was entitled to search him without a particularized suspicion. (*People v. Smith* (2009) 172 Cal.App.4th 1354, 1361.)

9

Officer Pope testified that he did so in order to determine defendant's compliance with the provisions of his parole. Thus, the parole search was not arbitrary, capricious, or harassing, regardless of whether the preceding encounter had been supported by nothing more than the observations that defendant was "clean" and "showered."

Defendant counters that the parole search was arbitrary, capricious, and harassing because the officers did not verify his admission that he was on parole. The argument is not accompanied by citation of authority or argument as to why defendant's admission should not suffice to support the search. No further discussion is required. (*People v. Harper* (2000) 82 Cal.App.4th 1413, 1419, fn. 4.)

Defendant argues that "blading" him in public, then putting him face down in a street in order to examine his pants and buttocks was arbitrary, capricious, and harassing. But the "blading" had been preceded by Officer Pope's observation that defendant was standing with his legs and feet close together. The placement in the street and the examination of the pants and buttocks had been preceded by the officers' observation of defendant's furtive movement in the patrol car, placing his handcuffed hands down the back of his pants. The officers could reasonably suspect that defendant had concealed some sort of weapon or other contraband and was trying to access it. Examining the apparent point of concealment was related to officer safety and was not arbitrary, capricious, or harassing.

In any event, neither the "blading" nor the examination of the back of defendant's pants involved the removal of defendant's clothing in public. Defendant was strip searched at the jail, at which time drugs were discovered between his butt cheeks.

In light of our conclusions, it is not necessary to consider the People's argument that defendant's revelation of his parole status attenuated the taint of any illegality in connection with the initial detention. Defendant's suppression motion was properly denied.

10

## II

### *Defendant's Marsden Motion*

Defendant contends the trial court abused its discretion when, following a *Marsden* hearing in the firearm case, the court failed to find a sufficient showing that defendant's right to counsel was substantially impaired. The claim is not properly before us.

While the narcotics case was pending, defendant was charged on January 24, 2013, with four new offenses, including possession of a firearm by a convicted felon. Defendant appeared in court on March 5, 2013, with his appointed counsel but the arraignment was continued to March 20, 2013. Prior to entering his not guilty plea on that date, defendant made a motion to substitute counsel and a *Marsden* hearing was held. Defendant complained that he was unhappy with appointed counsel because she had pressured him unsuccessfully to accept a plea offer at the March 5, 2013, appearance; she had not investigated the case -- specifically by interviewing witnesses and viewing a purported video recording of the scene -- before advising him to accept the offer; and she had not since learned the details of his case. Defendant also complained that appointed counsel had not provided him or his family members any discovery, including a copy of the video recording, which might have been erased automatically after 30 days.

After listening to appointed counsel's response, the trial court ruled that appointed counsel had been properly representing defendant; while there had been some misunderstandings, they would not affect appointed counsel's ability to represent defendant now that she knows the full extent of defendant's thoughts about the case. The court believed appointed counsel could continue to properly represent defendant; the *Marsden* motion was denied.

Defendant entered his no contest plea more than a month later, on May 9, 2013.

In *People v. Lobaugh* (1987) 188 Cal.App.3d 780 (criticized on another point in *People v. Maultsby* (2012) 53 Cal.4th 296, 303), this court held that a defendant's

11

contention that "the trial court erroneously denied his motion[] for appointment of new counsel" was "not cognizable" because "any errors were waived by his guilty plea. Defendant makes no contention here that his guilty plea was not intelligently and voluntarily made. Nor does defendant urge that the advice he received from counsel was inappropriate concerning his plea resulting in the plea not being intelligently and voluntarily made. The claimed *Marsden* error does not go to the legality of the proceedings resulting in the plea. [Citations.] The defendant is thus foreclosed from raising that issue on appeal." (*Lobaugh*, at p. 786.)

Similarly here, defendant does not make any claim that his plea on May 9, 2013, more than a month after the *Marsden* hearing, was somehow involuntary, unintelligent, or the product of inappropriate advice from counsel. (See *People v. Lovings* (2004) 118 Cal.App.4th 1305, 1311.) The record, which sheds no light on the attorney-client relationship following the *Marsden* hearing, utterly fails to support to such a claim. (Cf. *Lovings*, at p. 1312 ["[t]he animosity and poor communications previously suggested or alleged were not in evidence at the plea hearing"].) Because the denial of the *Marsden* motion does not go to the legality of the ensuing plea, the *Marsden* claim is foreclosed on appeal.[1]

Defendant counters that the *Marsden* issue is preserved because the trial court issued a certificate of probable cause "on precisely this issue." But Penal Code section 1237.5, which provides for certificates of probable cause, "is a procedural statute whose impact ' "relates to the procedure in perfecting an appeal from a judgment based on a plea of guilty, and *not to the grounds upon which such an appeal may be taken*." ' "

---

[1] Similarly, because the record does not show what investigation appointed counsel conducted and what advice she rendered to him following the *Marsden* hearing and prior to the plea, defendant cannot show that he received prejudicially ineffective assistance. (E.g., *People v. Avena* (1996) 13 Cal.4th 394, 418.)

(*People v. Maultsby*, *supra*, 53 Cal.4th at p. 302, quoting *People v. Hoffard* (1995) 10 Cal.4th 1170, 1178, italics added.)  Thus, the trial court's issuance of a certificate pursuant to Penal Code section 1237.5 does not preserve a *Marsden* claim that is otherwise foreclosed.  (See *People v. Lovings*, *supra*, 118 Cal.App.4th at p. 1311, citing *Hoffard* and explaining that "the lack of a certificate of probable cause played no part in *Lobaugh's* resolution of the *Marsden* issue.")

Defendant counters that *Lovings* should be rejected in favor of *People v. Eastman* (2007) 146 Cal.App.4th 688, which addressed a *Marsden* issue after the defendant pled no contest and obtained a certificate of probable cause.  (*Eastman*, at pp. 690-691.)  But *Eastman* did not discuss the foregoing authorities or consider whether the certificate somehow enlarged the grounds for the appeal.  The opinion is not authority for propositions it does not consider.  (*People v. Knoller* (2007) 41 Cal.4th 139, 154-155.)  In any event, *Maultsby*'s recent reaffirmation of *Hoffard* deprives *Eastman* of whatever persuasive force it otherwise might have had on this point.  Defendant's *Marsden* claim is not properly before this court.

### DISPOSITION

The judgment is affirmed.


          ROBIE          , J.


We concur:


    RAYE         , P. J.


    HOCH        , J.