Filed 9/10/15  In re D.F. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re D.F., a Person Coming Under the Juvenile Court Law. | D067714 |
| THE PEOPLE, | |
| Plaintiff and Respondent, | (Super. Ct. No. J257618) |
| v. | |
| D.F., | |
| Defendant and Appellant. | |

APPEAL from orders of the Superior Court of San Bernardino County, Barbara A. Buchholz, Judge.  Affirmed and remanded with instructions.

Wayne C. Tobin, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland and Kristen Hernandez, Deputy Attorneys General, for Plaintiff and Respondent.

D.F. appeals the juvenile court's orders declaring him a ward of the court under Welfare and Institutions Code section 602[1] and placing him on probation. D.F. contends the court erred in denying his motion to suppress evidence because he was detained by police without reasonable suspicion. D.F. also contends the court failed to make declarations on the record as to whether the charges against him were felonies or misdemeanors. We remand for the juvenile court to declare whether D.F.'s firearm possession offense is a felony or misdemeanor. The orders are otherwise affirmed.

FACTUAL AND PROCEDURAL BACKGROUND

Around 2:00 a.m. San Bernardino police officers Steve Taylor and Brandon Nelson were dispatched to the 1700 block of West Union Street after the police received a report that approximately seven gunshots were heard in the vicinity. The officers were patrolling separately and Nelson arrived at the scene first, minutes after receiving the call. Nelson was traveling westbound on the 1600 block of the street and Taylor was traveling eastbound. Nelson saw a 12-year-old boy standing on the sidewalk in front of the house at 1688 West Union Street and pulled over. When he got out of his car he saw 16-year-old D.F. was standing in the front yard of the same house, which appeared dark except for the porch light.

Nelson thought D.F.'s presence in the yard was suspicious. He asked the boys if they had seen anything or heard gunshots in the area and the 12-year-old responded he

---

[1]     All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

2

had not. Nelson searched the 12-year-old and while doing so asked D.F. why he was outside and if he had identification. D.F. responded that his girlfriend lived in the house and he was leaving to go home. Nelson told D.F. to come over the yard's fence to the sidewalk to talk with him. By this time Taylor had arrived and was standing next to Nelson while Nelson searched the 12-year-old. D.F. complied with Nelson's request and climbed over the fence to the sidewalk where Nelson was standing. Nelson then asked D.F. if he possessed anything illegal on his person. D.F. responded that he had a gun in his pocket. Nelson handcuffed D.F. then searched him and discovered a handgun in D.F.'s left front pant pocket. Nelson testified the interaction from the time he arrived at the scene until he handcuffed D.F. lasted approximately five minutes.

The district attorney filed a petition under section 602 alleging D.F. committed the offenses of possession of a firearm by a minor (Pen. Code § 29610, count 1) and possession of live ammunition by a minor (Pen. Code § 29650, count 2). D.F. filed a motion to suppress all evidence obtained before his arrest, asserting it was obtained during an unlawful detention. The prosecutor opposed the motion contending the evidence was obtained during a consensual encounter. The juvenile court denied the motion, agreeing with the prosecutor that there was no detention. The court also found the allegations in count 1 true and dismissed count 2. At a subsequent hearing, the court declared D.F. a ward of the court and placed him on probation.

While on probation, D.F. was detained again for breaking into a home in Colton, California. D.F. was identified by a neighbor who saw him and two other men jump the fence of the home. The district attorney filed a second petition under section 602 alleging

3

D.F. committed first degree residential burglary (Pen. Code § 459, count 1) and prowling (Pen. Code § 647, subd. (h), count 2).  The petition was later amended to add an allegation of second degree commercial burglary (Pen. Code § 459, count 3.).  At the dispositional hearing, the court dismissed counts 1 and 2, and D.F. admitted the allegation in count 3.  The juvenile court stated the level of the offense was a felony, declared D.F. a continued ward of the court, and placed him in the custody of his mother.

DISCUSSION

I

D.F. contends the juvenile court erred in denying his motion to suppress because the discovery of the gun was a product of a detention that was not supported by reasonable suspicion of criminal activity.  Our review of a ruling on a motion to suppress in a juvenile court proceeding is the same as our review of a motion to suppress in an adult criminal proceeding.  This court defers to the juvenile court's factual findings when supported by substantial evidence (*People v. Camacho* (2000) 23 Cal.4th 824, 830) and exercises independent judgment to determine if the facts found by the juvenile court support its determination that the search was reasonable under the Fourth Amendment. (*Ibid.*; *People v. Brown* (2015) 61 Cal.4th 968, 975.)

A

"Police contacts with individuals may be placed into three broad categories ranging from the least to the most intrusive:  consensual encounters that result in no restraint of liberty whatsoever; detentions, which are seizures of an individual that are strictly limited in duration, scope, and purpose; and formal arrests or comparable

4

restraints on an individual's liberty."  (*In re Manuel G.* (1997) 16 Cal.4th 805, 821.)
"Consensual encounters do not trigger Fourth Amendment scrutiny."  (*Ibid*.)

To lawfully detain an individual, an officer must have a reasonable, articulable suspicion that the person has committed or is about to commit a crime.  (*In re Manuel G.*, *supra*, 16 Cal.4th at p. 821.)  A "detention does not occur when a police officer merely approaches an individual on the street and asks a few questions.  [Citation.]  As long as a reasonable person would feel free to disregard the police and go about his or her business, the encounter is consensual and no reasonable suspicion is required on the part of the officer.  Only when the officer, by means of physical force or show of authority, in some manner restrains the individual's liberty, does a seizure occur.  [Citations.]"  (*Ibid*.)

There is no bright-line distinction between a consensual encounter and a detention. To make such a determination the court must examine the totality of the circumstances. (*In re Manuel G.*, *supra*, 16 Cal.4th at p. 821.)  "Circumstances establishing a seizure might include any of the following:  the presence of several officers, an officer's display of a weapon, some physical touching of the person, or the use of language or of a tone of voice indicating that compliance with the officer's request might be compelled. [Citations.]  The officer's uncommunicated state of mind and the individual citizen's subjective belief are irrelevant in assessing whether a seizure triggering Fourth Amendment scrutiny has occurred."  (*Ibid*.)  "In some circumstances, a child's age '[affects] how a reasonable person' in the suspect's position 'would perceive his or her freedom to leave.' "  (*J.D.B. v. North Carolina* (2011) 564 U.S. __ [131 S.Ct. 2394, 2402-2403].)

5

For a detention to be lawful, "the circumstances known or apparent to the officer must include specific and articulable facts [which would cause the officer] to suspect that (1) some activity relating to crime has taken place or is occurring or about to occur, and (2) the person [the officer] intends to stop or detain is involved in that activity." (*In re Tony C.* (1978) 21 Cal.3d 888, 893.) "[T]he reasonable suspicion standard . . . is not a particularly demanding one, but is, instead, 'considerably less than proof of wrongdoing by a preponderance of the evidence.' " (*People v. Letner* (2010) 50 Cal.4th 99, 146 (*Letner*).) This approach allows officers to draw on their own training and experience in deciding whether criminal activity is afoot. (*United States v. Arvizu* (2002) 534 U.S. 266, 273.) The detention is valid so long as the officer can " ' "provide some objective manifestation that the person detained may be involved in criminal activity." ' " (*Letner,* at p. 145.)

B

Here, the facts support D.F.'s contention that he was detained at the time he admitted having a gun. The contact began while D.F. and Nelson were separated by a fence and D.F. stood in the yard of his girlfriend's house. At that point, D.F. perhaps could have left the scene and gone back inside his girlfriend's house. However, Nelson then told D.F. to come over the yard's fence. D.F. complied with Nelson's request that he climb over the fence and come to where the two uniformed officers were standing, and where D.F.'s 12-year-old companion was already detained and being searched by Nelson. A show of force was created both by the presence of Nelson and Taylor, two uniformed officers, and by the fact that the other minor was being physically searched by Nelson at

6

the time. Given these facts, a reasonable person of D.F.'s age would not have felt free to either leave or to disregard the questions asked by Nelson.[2]

D.F. next asserts suppression was required because Nelson detained D.F. without reasonable suspicion of criminal activity. D.F. asserts it was unreasonable for Nelson to detain him because Nelson and Taylor had no information suggesting the gunshots were fired by two African-American males, there was no odor of gunpowder or spent casings at the location where the detention occurred, and Nelson had not investigated the 1700 block of West Union Street where the shots were reportedly fired. D.F. also points to the fact that his girlfriend later came outside and identified D.F. as her boyfriend.

These facts, however, did not negate other facts and circumstances supporting Nelson's detention of D.F. (See *Letner, supra*, 50 Cal.4th at 146 ["the possibility of innocent explanations for the factors relied upon by a police officer does not necessarily preclude the possibility of a reasonable suspicion of criminal activity."].) Nelson and Taylor were responding to a report that approximately seven gunshots were heard coming from the block immediately west of where D.F. and his 12-year-old companion were standing at the time Nelson arrived. Further, the boys were outside at 2:00 a.m., far past the 10:00 p.m. curfew in effect for minors at the time, and were standing in the yard of a home that was dark and appeared locked for the night. These facts supported the officers' suspicion that D.F. might have been involved in the reported gunfire. (See *People v.*

---

2      The fact that Nelson phrased his request for D.F. to come over the fence as a question and not a demand does not mean there was no detention. (See *In re J.G.* (2014) 228 Cal.App.4th 402, 412 ["phrasing a statement as a request rather than a command [does not] necessarily prevent[] a detention from occurring."].)

*Castaneda* (1995) 35 Cal.App.4th 1222, 1229-1230 [reasonable suspicion existed where the defendant was sitting in a parked car, late at night, in an otherwise abandoned commercial industrial area where police were investigating a reported burglary].) Accordingly, Nelson's detention of D.F. and subsequent retrieval of the gun after D.F. admitted it was in his pocket did not run afoul of the Fourth Amendment. The court did not err in denying D.F.'s motion to suppress.

## II

D.F. next contends the juvenile court erred in failing to declare on the record whether the firearm possession and burglary offenses were felonies or misdemeanors, as required by section 702. With respect to the burglary offense, the juvenile court expressly declared the offense was a felony on the record. The juvenile court, however, did not make a declaration with respect to the firearm possession offense. As the Attorney General concedes, remand is warranted for the juvenile court to make an express declaration with respect to this offense.

"If the minor is found to have committed an offense which would in the case of an adult be punishable alternatively as a felony or a misdemeanor, the court shall declare the offense to be a misdemeanor or felony." (§ 702.) An express declaration by the court is mandatory. (*In re Manzy W.* (1997) 14 Cal.4th 1199, 1204 (*Manzy W.*); see Cal. Rules of Court, rule 5.780(e)(5).) In addition to serving an administrative purpose, the requirement that the juvenile court declare whether a " 'wobbler' " offense is a misdemeanor or felony "serves the purpose of ensuring that the juvenile court is aware of,

8

and actually exercises, its discretion under Welfare and Institutions Code section 702." (*Manzy W.*, at p. 1207.)

The fact that a section 602 petition sustained by the juvenile court describes a charged offense as a felony does not by itself indicate compliance with the court's statutory obligation to explicitly declare whether the offense is a felony or misdemeanor. (*In re Kenneth H.* (1983) 33 Cal.3d 616, 619-620.) Likewise, juvenile court minutes containing a notation that the court found the minor committed a charged felony offense does not establish compliance with the court's statutory obligation to explicitly declare whether the offense is a felony or misdemeanor if the hearing transcript does not support the notation. (*In re Dennis C.* (1980) 104 Cal.App.3d 16, 23.)

Failure to make an express declaration does not result in " 'automatic' " remand. (*Manzy W., supra*, 14 Cal.4th at p. 1209.) The record in a given case may show that the juvenile court, despite its failure to comply with the statute, was aware of its duty and exercised its discretion to determine the felony or misdemeanor nature of a wobbler. (*Ibid.*) "In such case, when remand would be merely redundant, failure to comply with the statute would amount to harmless error." (*Ibid.*) The key issue is "whether the record as a whole establishes that the juvenile court was aware of its discretion to treat the offense as a misdemeanor and to state a misdemeanor-length confinement limit." (*Ibid.*)

Here, with respect to D.F.'s burglary offense, the court stated the "[l]evel of the offense is a felony" at the dispositional hearing. The minute order for the hearing states the "court finds [the] offense(s) would be a felony if committed by an adult." That order also states "The minor voluntarily admits allegation Count 3 01/16/2015 PC459

9

misdemeanor on subsequent petition filed 01/21/12015" and "The court finds true as to the following allegation: Count 3 01/16/2015 PC459 misdemeanor on subsequent petition filed 01/21/2015."  D.F. contends these second two notations show a discrepancy and contradict the earlier statement in the order and the trial court's statement at the hearing that the offense was being treated as a felony.  He argues that in addition to stating the level of the offense was a felony, the court was also explicitly required to state it was *exercising its discretion* to treat the offense as a felony.  We disagree.

Under the statute the court was required to "declare the offense to be a misdemeanor or felony."  (§ 702.)  The hearing transcript shows the juvenile court made the requisite declaration, stating clearly:  "Level of the offense is a felony."  This statement was not vague, as D.F. asserts, and demonstrated both the court's awareness of its discretion and proper exercise of that discretion.  No further statement concerning the court's awareness of its discretion was required.  (See *Manzy W., supra*, 14 Cal.4th at p. 1204 [the statute "requires an explicit declaration by the juvenile court whether an offense would be a felony or misdemeanor in the case of an adult."].)

In contrast, with respect to D.F.'s earlier firearm possession offense the court made no declaration concerning the level of the offense.  Remand is not necessarily required in the absence of an express declaration if the record otherwise shows the court's awareness and exercise of its discretion.  (*Manzy W., supra*, 14 Cal.4th at p. 1209.)  The record here, as the Attorney General concedes, does not support such a conclusion and remand is warranted.

DISPOSITION

The matter is remanded for the limited purpose of an express declaration by the juvenile court whether the firearm possession offense is a felony or misdemeanor. The juvenile court's orders are otherwise affirmed.

IRION, J.

WE CONCUR:


McCONNELL, P. J.


O'ROURKE, J.

11