Filed 10/25/21; certified for publication 11/23/21 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>　　Plaintiff and Respondent,<br><br>　　　　v.<br><br>JAVIER JUAN MURILLO,<br><br>　　Defendant and Appellant. | G059845<br><br>(Super. Ct. No. 16WF1816)<br><br>O P I N I O N |

Appeal from a postjudgment order of the Superior Court of Orange County, Gary S. Paer, Judge. Reversed and remanded with directions.

Martin F. Schwarz, Interim Public Defender, and Jamie Kim, Deputy Public Defender, for Defendant and Appellant.

Todd Spitzer, District Attorney, and Holly M. Woesner, Deputy District Attorney, for Plaintiff and Respondent.

Appellant Javier Juan Murillo was convicted by jury of forcibly resisting an executive officer in the performance of his duties, as well as delaying a peace officer in the performance of his duties and possessing drug paraphernalia. After he served his prison sentence, he moved to vacate his resisting conviction based on newly discovered evidence, pursuant to Penal Code section 1473.6.[1] That section utilizes the same procedural rules that are used for adjudicating a petition for writ of habeas corpus. Thus, the trial court was required to refrain from judicial factfinding at the initial stage of the motion process, prior to the issuance of an order to show cause. However, based on its own assessment of the underlying facts of the case and the credibility of the prosecution's key witness, the trial court summarily denied appellant's motion for failure to establish a prima facie case for relief. We agree with appellant that such factfinding at the initial stage of the motion process was improper. Therefore, we reverse the trial court's denial order and remand for further proceedings.

FACTUAL AND PROCEDURAL BACKGROUND

A detailed statement of the facts is set forth in our prior opinion affirming appellant's convictions on direct appeal. (See *People v. Murillo* (Mar. 16, 2018, G054330 [nonpub. opn.].) For purposes of this proceeding, the following facts will suffice:

On August 15, 2016, Sheriff's Deputy Phillip Avalos and several of his fellow deputies went to appellant's house to execute a warrant for his arrest. But when they announced their presence at the house, appellant jumped out his bedroom window and fled on foot. Avalos chased him into a neighbor's yard and ordered him to stop. However, according to Avalos, appellant refused to yield, so he tackled him to the ground and a struggle ensued.

---

[1] All further statutory references are to the Penal Code.

2

Avalos ordered appellant to stop resisting and tried to grab his hands, but appellant did not obey. Instead, he kept reaching for his waistband and trying to pull away from Avalos as Avalos rained punches down on his head and back. It wasn't until a second deputy arrived on the scene – Sergeant Timothy Critz – that appellant was finally subdued, handcuffed and taken into custody. A search of his person turned up two knives and two hypodermic needles.

Before trial, appellant filed a *Pitchess* motion to discover any information in Avalos' personnel file reflecting dishonesty, moral turpitude or excessive use of force. (See *Pitchess v. Superior Court* (1974) 11 Cal.3d 531.) Appellant contended any such information would be relevant to his defense theory on the resisting charge, which was based on his physical struggle with Avalos. The theory was, that contrary to what Avalos told the jury, appellant had surrendered to Avalos during the chase. Therefore, when Avalos tackled him and forcibly placed him under arrest, Avalos was not acting lawfully – a necessary element for resisting an executive officer in the performance of his duties. (See § 69, subd. (a); *In re Manuel G.* (1997) 16 Cal.4th 805, 815 [a person cannot be convicted of an offense against a peace officer engaged in the performance of his duties unless the officer was acting lawfully when the alleged offense occurred].) Upon reviewing Avalos' personnel file, the trial court did not find any discoverable material related to this theory.

However, after appellant was convicted and served his two-year prison sentence, the prosecution informed defense counsel of an Internal Criminal Investigation report (ICI report) that was issued by the Orange County Sheriff's Department in 2018, about a year and a half after appellant's trial ended. The ICI report focused on Avalos' evidence booking practices between February 1, 2016 and February 1, 2018. It found that of the 51 cases in which Avalos had collected evidence during that period, he made false statements in connection with 5 of those cases.

In three of those five cases, Avalos wrote in his police reports that he had booked certain items (such as drugs, knives and photographic evidence) into the sheriff's evidence locker when in fact he had not actually done so. In the other two cases, he booked items considerably later than the time he stated in his police reports. The ICI report also found Avalos routinely disregarded the sheriff's departmental policy to book evidence in a timely manner. Avalos admitted to investigators he did not always follow best practices when it came to booking evidence. When asked about the various items that he said he booked but were still unaccounted for, he said they were "probably lost."

Based on the ICI report, appellant moved through appointed counsel to vacate his resisting conviction pursuant to section 1473.6, subdivision (a)(2), on the ground the report constituted newly discovered evidence that Avalos had testified falsely at his trial. At the motion hearing, the prosecutor said she opposed the motion. However, she did not offer any substantive input on the merits because the trial judge summarily denied the motion for failure to state a prima facie case for relief.

In so doing, the judge emphasized that he had presided over appellant's trial and that he considered Avalos to be a credible witness, given all the evidence that was presented during the trial, including Sergeant Critz's testimony that appellant was resisting arrest when he arrived on the scene. Given Critz's testimony in that regard, the judge felt Avalos' testimony on the resisting charge was amply corroborated. The judge suggested that Critz's testimony rendered Avalos' testimony superfluous, even though Critz did not arrive on the scene until about 10 seconds after Avalos tackled appellant, which was after the point when appellant allegedly stopped fleeing and surrendered to Avalos.

During his ruling, the judge also made it clear he did not see any nexus between the evidence revealed in the ICI report and the veracity of Avalos' testimony. He felt it would be a "huge stretch" to conclude Avalos lied at trial just because he "was late in booking evidence on unrelated cases." He also questioned whether the evidence

4

of Avalos' booking practices would have been admissible had it been available at the time of appellant's trial. The judge said he was skeptical about that prospect absent evidence Avalos' booking practices were intentionally deceptive or rose to the level of criminal misconduct.

## DISCUSSION

Appellant contends the trial court erred in summarily denying his petition for vacatur without issuing an order to show cause. We agree.

Section 1473.6 states, "(a) Any person no longer unlawfully imprisoned or restrained may prosecute a motion to vacate a judgment for any of the following reasons:

"(1) Newly discovered evidence of fraud by a government official that completely undermines the prosecution's case, is conclusive, and points unerringly to his or her innocence.

"(2) Newly discovered evidence that a government official testified falsely at the trial that resulted in the conviction and that the testimony of the government official was substantially probative on the issue of guilt or punishment.

"(3) Newly discovered evidence of misconduct by a government official committed in the underlying case that resulted in fabrication of evidence that was substantially material and probative on the issue of guilt or punishment. Evidence of misconduct in other cases is not sufficient to warrant relief under this paragraph.

"(b) For purposes of this section, 'newly discovered evidence' is evidence that could not have been discovered with reasonable diligence prior to judgment.

"(c) The procedure for bringing and adjudicating a motion under this section, including the burden of producing evidence and the burden of proof, shall be the same as for prosecuting a writ of habeas corpus."

This statute was enacted in response to the so-called Rampart scandal in which several Los Angeles police officers were found to have planted evidence, falsified reports and committed perjury. (*People v. Germany* (2005) 133 Cal.App.4th 784, 791.)

5

"Because the misconduct was discovered many years after it occurred, those who were no longer in custody at the time of the discovery of the misconduct [were] not able to set aside their convictions" under existing law.  (*Ibid*.)  Therefore, the Legislature enacted section 1473.6 as a means "for those no longer in the system to challenge their judgment when they learn that their conviction was obtained in part because of fraud or false evidence by a government official.'  [Citation.]"  (*Ibid*.)

Pursuant to subdivision (c) of the statute, a trial judge entertaining a motion for vacatur utilizes the same procedures applicable to a petition for a writ of habeas corpus.  (See Cal. Rules of Court, rule 4.551.)  Therefore, if the moving party makes a prima facie case for relief, the judge must issue an order to show cause.  (*Id*., subd. (c)(1).)  In determining whether a prima facie case has been made, the judge must take the moving party's factual allegations *as true* and make a preliminary assessment whether the moving party would be entitled to relief *if his or her factual allegations were proven*. (*Ibid*.)

The trial judge did not have the benefit of our Supreme Court's latest explication of the procedures to be applied in such cases and had to rule without that guidance.  As our Supreme Court recently explained in *People v. Lewis* (2021) 11 Cal.5th 952 (*Lewis*), this process is not adversarial in nature.  *Lewis* ruled that because the procedure for adjudicating a petition for resentencing under section 1170.95 is analogous to the procedure for adjudicating a petition for writ of habeas corpus, the trial court may consider the record of conviction in determining whether the petitioner has made a prima facie case for resentencing relief.  (*Id*. at p. 971.)  However, *Lewis* cautioned the scope of the trial court's inquiry into the record of conviction "is limited."  (*Ibid*.)  The trial court "should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.'  [Citation.]"  (*Id*. at p. 972.)  And it "'should not reject the petitioner's factual allegations on credibility grounds without first conducting an evidentiary hearing.'  [Citation.]"  (*Id*. at p. 971)  The trial court may deny relief at the prima facie stage if

6

petitioner's allegations are clearly refuted in the record. (*Ibid*.) But, overall, the bar for establishing a prima facie case for relief is "'very low.'" (*Id*. at p. 972.)

If the defendant's allegations clear this minimal threshold, the issuance of an order to show is *required*. (*People v. Germany, supra*, 133 Cal.App.4th at p. 790.) Then, once formal briefing is complete, the trial court "'must either grant or deny the relief [requested] or order an evidentiary hearing. An evidentiary hearing is required if, after considering the [motion to vacate], the return, any denial, any affidavits or declarations under penalty of perjury, and matters of which judicial notice may be taken, the court finds there is a reasonable likelihood that the [moving party] may be entitled to relief and the [moving party's] entitlement to relief depends on the resolution of an issue of fact.'" (*Id*. at pp. 790-791, quoting Cal. Rules of Court, rule 4.551(f).)

Appellant's motion to vacate presented two main issues. First, did the false statements attributed to Avalos in the ICI report demonstrate dishonesty and bear on the credibility of his testimony at trial? Stated differently, did the newly discovered evidence show "a government official testified falsely at the trial" within the meaning of section 1473.6, subdivision (a)(2)? Second, per that subdivision, was Avalos' testimony "substantially probative on the issue of guilt" on the charge of resisting an executive officer in the performance of his duties?

As for the first question, the trial court did not believe the ICI report was sufficient to prove Avalos testified falsely in this case. That belief was based on a variety of assumptions. The court assumed the ICI report simply reflected the fact that Avalos had booked evidence late in other cases, and that there was nothing illegal about what he had done. However, the report actually reveals that Avalos made false statements in his police reports about when and whether he booked certain evidence. As appellant rightly points out, it is unlawful for a peace officer to make knowingly false statements in a police report about any material matter. (§ 118.1.) Whether Avalos knew the subject

7

statements in his reports were false, and whether the statements were material, are factual issues that were not suitable for resolution at the prima face stage of the proceedings.

In assessing the significance of Avalos' false statements, the trial court was also under the impression they were not made until a couple of years after appellant's trial. Even assuming they reflected dishonesty, the court said it was hard pressed to see how such belated statements could have any bearing on the veracity of Avalos' earlier trial testimony. However, some of the false statements at issue were contained in police reports that Avalos wrote in the fall of 2016, which is when he testified in this case. And the remaining statements appeared in reports Avalos prepared within months of that time period. Contrary to the trial court's understanding, Avalos' false statements were not unduly remote in terms of their temporal relationship to the trial.

Turning to the secondary issue of whether Avalos' testimony was substantially probative of appellant's guilt, the record shows Avalos was the named victim and key witness on the resisting charge. It is true that Critz also witnessed some of the events giving rise to that charge. As the trial court repeatedly emphasized in its ruling, Critz testified he saw appellant resist arrest after Critz arrived on the scene to assist Avalos. Thus, standing alone, Critz would have been able to independently establish the resisting element of that charge.

However, Critz was not in a position to testify on the critical issue of whether Avalos was acting lawfully when he tackled appellant and tried to take him into custody. That issue turned on whether, as appellant contended, he surrendered to Avalos prior to then, or whether, as Avalos contended, appellant did not surrender. Because Critz did not arrive on the scene until after Avalos had already tackled appellant and they were struggling on the ground, he was unable to shed any light on that pivotal issue. Consequently, Avalos' testimony on the lawfulness issue was not only probative, it was essential in terms of establishing appellant's guilt on that count. All of these

8

considerations support the conclusion the trial court acted prematurely in denying appellant's motion for failure to state a prima facie case for relief.

In arguing otherwise, respondent draws our attention to subdivision (a)(3) of section 1473.6, which states that newly discovered evidence of misconduct by a government official in other cases is insufficient to prove the official fabricated evidence in the case in which vacatur is sought. However, by its terms, that limitation only applies when the defendant is seeking vacatur under section 1473.6, subdivision (a)(3), based on the alleged fabrication of evidence. It does not apply when, as here, the defendant seeks vacatur under section 1473.6, subdivision (a)(2), based on false testimony. In fact, unlike subdivision (a)(3), subdivision (a)(2) of section 1473.6 contains no limitations on the type of evidence that can be used to justify vacatur under that provision.

For all of these reasons, we conclude the trial court erred in summarily denying appellant's motion for vacatur for failure to state a prima facie case for vacatur. Because the trial judge has already taken a position on Avalos' credibility and the veracity of his trial testimony, the matter shall be assigned to a different judge on remand to the superior court. (Code Civ. Proc., § 170.1, subd. (c).)

## DISPOSITION

The trial court's order denying appellant's motion for vacatur is reversed and the matter is remanded for further proceedings. On remand, the Presiding Judge of the Orange County Superior Court shall assign the case to a different judge, who shall

9

issue an order to show cause to the People and resolve appellant's motion in accordance with the rules for adjudicating a petition for writ of habeas corpus, as set forth in this opinion and the California Rules of Court.


                                        BEDSWORTH, ACTING P. J.


WE CONCUR:


FYBEL, J.


ZELON, J.*


*Retired Justice of the Court of Appeal, Second Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.


10

Filed 11/23/21

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
|    Plaintiff and Respondent, | G059845 |
|       v. | (Super. Ct. No. 16WF1816) |
| JAVIER JUAN MURILLO, | O R D E R |
|    Defendant and Appellant. | |

The Orange County Public Defender's Office has requested that our opinion, filed on October 25, 2021, be certified for publication. It appears that our opinion meets the standards set forth in California Rules of Court, rule 8.1105(c). The request is GRANTED.

The opinion is ordered published in the Official Reports.


BEDSWORTH, ACTING P. J.

WE CONCUR:


FYBEL, J.


ZELON, J.*


*Retired Justice of the Court of Appeal, Second Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.


2