Filed 7/25/24  P. v. Smith CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>  v.<br><br>SHANE PAUL SMITH,<br><br>    Defendant and Appellant. | C096806<br><br>(Super. Ct. No. 21FE000130) |

Defendant Shane Paul Smith pleaded no contest to a charged offense as part of an agreement that included a referral to a mental health and substance use treatment program.  The People and defendant also agreed that a sentence of seven years in prison would be imposed if he failed to complete the treatment program.

Defendant was subsequently removed from the program due to his behavior and repeated violation of facility rules.  Following a hearing, the trial court imposed the sentence previously contemplated.

1

On appeal, defendant contends the trial court abused its discretion by refusing to rerefer him to the treatment program, and violated his rights to due process and fundamental fairness by failing to provide him with an adequate hearing. Disagreeing, we affirm.

## FACTS AND PROCEEDINGS

*Factual Background*

The factual basis of defendant's plea stated as follows: "[O]n April 20th, 2021, the defendant and [B.D.] were in a dating relationship and resided together in Sacramento. They argued and defendant attacked [B.D.] The attack included strangulation of [B.D.] and slamming her head into a wall. [B.D.] lost consciousness as a result of the assault and was later diagnosed with a concussion."

*Defendant's Plea*

On November 24, 2021, the trial court set out the parties' agreement that defendant would plead no contest to one count of inflicting corporal injury resulting in a traumatic condition on B.D., with whom he had a dating relationship (Pen. Code, § 273.5, subd. (a); count eight), and admit the enhancement allegation that he inflicted great bodily injury upon B.D. under circumstances involving domestic violence (*id.*, § 12022.7, subd. (e)).[1] The court noted that it "would impose the upper term [on count eight] of four years, impose the low term on the enhancement of three years, consecutive, for an aggregate term of seven years in state prison. That seven-year state prison will be suspended. [Defendant] will be placed on five years formal probation. He would waive all credits." The court indicated that the "suspended time" would be connected to

---

[1] Further undesignated statutory references are to the Penal Code.

2

defendant's successful completion of a mental health/substance abuse treatment program called "Hungry, Angry, Lonely, and Tired" (HALT).[2]

The prosecutor added that defendant would be evaluated for reentry court upon completing the HALT program, and if denied, the People would fashion a probation grant. Additionally, if defendant failed to complete the HALT program, "the seven-year sentence would be imposed."

Defendant subsequently waived his right to a full probation report in order to proceed with his change of plea and the referral to the HALT program. The court observed that a probation report "will be ordered later for purposes of sentencing and reentry court."

The court then advised defendant, "Under this agreement, the court will impose ultimately the upper term of four years on [count eight], the low term on [the enhancement] for an aggregate term of seven years in state prison. That will be suspended pending successful completion of the [HALT] program and reentry court . . . ."

The court continued: "As part of this agreement, you are waiving all credits and you'll be sentenced to 365 days as a term of your five years of probation. That allows you with this waiver of credits to do the [HALT] program." Defendant waived his credits.

Defendant then pleaded no contest to count eight and the enhancement. Defendant waived time for judgment and sentencing, and the trial court referred him to the HALT program. However, the court accepted the parties' agreement that there did not need to be "an actual imposed sentence of 365 days." It stated that it "will not impose sentence. Time has been waived for sentencing. There will be no imposition imposed [*sic*] at this

---

[2] The HALT program was incorrectly identified as the Holt program in portions of the record.

3

time." The court noted that "all remaining counts will be dismissed at the time of judgment and sentencing." Accordingly, although the trial court appears to have intended to impose the seven-year sentence and stay its execution, the court did not actually impose the sentence or place defendant on probation. However, the court added that if defendant did not complete the HALT program, the consequences would be "seven years in prison."

*Defendant's Removal from the Program*

Defendant was placed into the HALT program in January 2022. On February 2, 2022, the trial court advised counsel that it had received a series of e-mails conveying "mixed messages" about defendant's participation in the program. Specifically, defendant appeared "motivated in some instance[s] and want[ing] to get done as quickly as he can in others." He had shown a "poor attitude" in his first class but participated well in others. The program's administrator, Deputy Amy Canela, also stated that deputies had confiscated a prohibited book from defendant's bunk, which he claimed his girlfriend had sent to him. Defense counsel attributed the difficulties to recurring quarantines due to COVID-19 outbreaks.

On March 8, Canela sent a "positive report overall" to the trial court, which indicated that defendant "is making progress in the assigned classes" and had "completed 129 treatment hours."

At a hearing on April 25, the trial court informed the parties that it had received an e-mail from Canela indicating that defendant had been removed from the HALT program. The e-mail stated that defendant had issues with instructors in his classes, and had been disruptive. In one instance, defendant believed he was entitled to an incentive for participating in class and became agitated and disruptive when he did not receive one. In class, defendant was "constantly negative . . . , would continuously talk down to others, wasn't taking his opportunity in Reentry seriously, and treat[ed] other participants as less than." Defendant was not receptive to multiple conversations with Canela and

4

three other staff members about changing his behavior, and took only minimal accountability for his actions.

Canela's e-mail also documented multiple rule violations occurring while defendant used the phone. These included coordinating a " 'deal' " for Suboxone, after which "it was discovered" that defendant had purchased and used Suboxone on multiple occasions. On April 9 and 10, defendant received a "drop" from a person in another housing unit, subsequently coordinated a payment to that person, and then told someone else, " 'Got the stuff, and all went well.' " When confronted, defendant denied that he had purchased Suboxone, but then admitted to purchasing Suboxone multiple times and said that he wanted to continue using Suboxone because he previously had a prescription, although he was aware that his conduct had violated the facility's rules and procedures for obtaining medications.

Canela "advised [defendant] multiple times to follow the rules and to stay out of trouble." She removed him from the program for 30 days but told him he could come back to programming after that break if he used the time to reflect on his actions. However, following his removal, defendant repeatedly violated facility rules by arranging cash deals with other inmates, making three-way phone calls, and using other inmates' phone lines. Canela noted that defendant abruptly ended a call with his girlfriend when she began discussing a "cash app" transaction, requested that his girlfriend send money to another cash app user, admonished his mother not to use his name, and talked about the cash app only on three-way calls or on other inmates' phones. Finally, Canela noted that defendant mentioned the victim of his crime by name in two separate phone calls.

Canela's e-mail stated that defendant would not be reinstated into the program after 30 days. She added: "This decision has not been made lightly and has been the cause for much thought regarding the gravity of [defendant's] actions and his willingness to continue these behaviors (even after removal), and the negative impact that could have on the recovery community within the Reentry program."

5

Canela's e-mail did not include any supporting documentation, including write-ups for improper use of cell phones, referrals for criminal prosecution related to drug possession, or negative progress reports from instructors in the HALT program.

The trial court observed that defendant's removal from the HALT program triggered the suspended sentence, but over the People's objection, the court permitted defense counsel to obtain mitigating information to allow a "full and fair hearing." The court noted that it "just [does not] know what the mitigation would be," but clarified that it would not "prejudge it."

*Mitigating Documentation*

Defendant submitted documentation in mitigation, which included a report of a psychological evaluation performed by Dr. Juliana Rohrer, letters in support, and certificates of completion from classes defendant completed in the HALT program, including 63 hours of parenting education, 27 sessions of relapse prevention, 26 sessions regarding "courage to change," 22 sessions of introduction to recovery, and 9 sessions of a class entitled "Man Alive."

As relevant here, the Rohrer report concluded that defendant "suffer[ed] from a combination of conditions that contribute to his difficulties following the requirements that were set for him," but that "his behavior can be improved with proper meditation and treatment." Rohrer noted that defendant had explained to her that he is assigned to a psychiatrist, but he does not see the psychiatrist personally; instead, he speaks with a social worker who relays information to the psychiatrist. Her report concluded that he would benefit from in-person close monitoring from a psychiatrist and modification of medications through the psychiatrist's direction, rather than having medication decisions being relayed through an intermediary. She opined that defendant's symptoms "should decrease once his medications are adequately adjusted and he will likely at that time experience much less or no irritability, anger, mood swings, hypomania, labile affect, anxiety, impulsivity or depression."

6

*Hearing and Sentencing*

On July 26, 2022, the trial court held a sentencing hearing, at which it agreed to hear arguments from counsel regarding whether defendant should be rereferred to the HALT and reentry programs.

Defense counsel argued that defendant should be rereferred to the HALT program because he had been improperly medicated and treated while in custody, had completed multiple classes in the HALT program and was only weeks away from finishing the program when he was removed from it, and had done well in custody until Canela began supervising him. Counsel further observed that defendant worked in areas of the facility requiring the staff's trust and facility staff said defendant was compliant and respectful. Additionally, Canela's e-mail was incongruous with all other reports of defendant's conduct in custody, and her report contained multiple references to other people but did not name those people or attach their reports. Finally, counsel noted that Canela was replaced as program administrator soon after removing defendant from the program, argued that Canela's departure warranted additional investigation, and requested additional time to interview HALT program instructors to determine whether they believed defendant could succeed in the program after Canela's departure.

The prosecutor observed that defendant had received multiple opportunities to succeed in the HALT program but had repeatedly violated the program's rules. The prosecutor further argued that defendant's mental health issues had been known since the beginning of the case, and noted that it was "convenient" that his mental health issues only began affecting his behavior while he was enrolled in the HALT program.

Addressing the court, defendant stated that his initial goal was simply to finish the program, but later he became comfortable in the program and sought feedback from instructors. He stated that Canela was resistant to feedback about the program and became frustrated when he asked her about additional work he could put in to accomplish his goals. He indicated that he had an issue with his first counselor, but that things

7

improved when he was assigned to a different one, and he would try to succeed if given another opportunity.

The trial court recognized that defendant had some relational difficulties with Canela. However, Canela's e-mail had identified "clear violations of the program," including "those drops and phone calls" that had nothing to do with defendant's relationships with staff members, and left no choice but to terminate him from the program. Based on Canela's e-mail detailing his violations of the facility's rules and removal from the program, the court described defendant's actions as involving "multiple layers of deception and violations . . . and it's not just Deputy Canela."

The trial court recognized that Rohrer's report may have explained defendant's behavior, but it did not excuse clear rules violations. The court determined: "I don't see that what [defendant] is doing at the end of his term in HALT was anything but an intentional violation of the rules because that's what he decided he wanted to do and that ultimately was the last straw in terms of the sequence of events chronologically as to why he was removed from the program. I find he has violated the HALT program and the seven-year state prison sentence will be issued."

Defendant timely filed notice of appeal. The case was fully briefed in May 2024 and was assigned to the current panel at the end of that month.

## DISCUSSION

### I

### *Imposing the Suspended Sentence*

Defendant contends the trial court abused its discretion by declining to rerefer him to the HALT program despite overwhelming evidence in favor of doing so and violated his rights to due process and fundamental fairness by failing to employ procedures required in finding a violation of probation. We disagree.

8

A. *Certificate of Probable Cause*

Initially, the Attorney General argues that defendant's claim is barred due to his failure to obtain a certificate of probable cause. Observing that defendant pleaded no contest and was informed that the trial court would impose a seven-year sentence if he failed to complete the HALT program, the Attorney General characterizes defendant's challenge to the court's procedures as an attack on the validity of the plea. Defendant responds that his claim does not require a certificate of probable cause because it challenges the procedures the court employed to determine whether to sentence him at all, not the validity of the plea agreement or the length of the sentence imposed. We agree with defendant.

A criminal defendant who appeals following a plea of no contest or guilty without a certificate of probable cause can only challenge the denial of a motion to suppress evidence or raise grounds arising after the entry of the plea *that do not affect the plea's validity.* (§ 1237.5; Rules of Court, rule 8.304(b)(1).) "In determining whether section 1237.5 applies to a challenge of a sentence imposed after a plea of guilty or no contest, courts must look to the substance of the appeal: 'the crucial issue is what the defendant is challenging, not the time or manner in which the challenge is made.' [Citation.] Hence, the critical inquiry is whether a challenge to the sentence is *in substance* a challenge to the validity of the plea, thus rendering the appeal subject to the requirements of section 1237.5." (*People v. Panizzon* (1996) 13 Cal.4th 68, 76.)

The Attorney General argues: "[Defendant] was aware that the trial court would continue to monitor his performance in the [HALT] program and impose the sentence if he did not complete it. The trial court lacked discretion to impose any other sentence." But defendant's claim is *not* that the trial court was not entitled to sentence him if he failed to complete the HALT program, or that it had discretion to impose some other sentence. Rather, defendant claims that the trial court abused its discretion when it determined that he failed to complete the HALT program--or that he should not be

9

rereferred to it--and failed to implement procedures satisfying his right to due process. Those claims do not attack the validity of the plea.

The Attorney General relies on *People v. McNight* (1985) 171 Cal.App.3d 620, but that case is distinguishable. In *McNight*, the prosecutor agreed to recommend a sentence to the court, and the defendant appealed after the trial court imposed the recommended sentence. The defendant argued that counsel should have raised mitigating circumstances favoring a lesser sentence. The reviewing court concluded that the defendant was required to obtain a certificate of probable cause because he claimed that he should have received a lesser sentence than that to which he had agreed. (*Id.* at p. 624.)

Conversely, here defendant does not claim that the trial court was required to impose a sentence less than seven years. Indeed, he does not challenge the conditions of the plea. Instead, he contends he was entitled to a hearing before the court determined that he had failed to satisfy a condition precedent to the imposition of the sentence. Thus, while the Attorney General argues that the trial court lacked discretion to impose any sentence other than the one it imposed, the issue here is whether the conditions precedent to imposing the sentence had been satisfied. That is not a challenge to the validity of the plea, but is rather a claim based on a ground arising after the entry of the plea that does not affect its validity. (§ 1237.5.)

B. *Analysis*

Defendant contends the trial court abused its discretion when it imposed the prison term in light of the evidence presented. He argues: (1) the court was not entitled to rely on Canela's e-mail, which was vague, unsworn, and not supported by adequate documentation; and (2) even if the court could have properly accepted Canela's e-mail as credible, defendant presented overwhelming evidence in mitigation, including the Rohrer report, certificates of completion of various classes he took while enrolled in the HALT program, and other evidence about his behavior while incarcerated.

10

We review a trial court's sentencing choice for an abuse of discretion. (*People v. Carmony* (2004) 33 Cal.4th 367, 378.) Generally, trial courts retain broad discretion to determine if a defendant is a suitable candidate for sentencing alternatives. (See, e.g., *People v. Whitmill* (2022) 86 Cal.App.5th 1138, 1147 [mental health diversion].) " 'A court abuses its discretion when it makes an arbitrary or capricious decision by applying the wrong legal standard [citations], or bases its decision on express or implied factual findings that are not supported by substantial evidence.' " (*Ibid.*)

Substantial evidence is evidence that is reasonable, credible, and of solid value. (*In re Ricardo L.* (2003) 109 Cal.App.4th 552, 564.) In applying this standard, we "must view the record in the light most favorable to the prevailing party below and give due deference to how the trier of fact may have evaluated the credibility of witnesses, resolved conflicts in the evidence, and drawn reasonable inferences from the evidence." (*Conservatorship of O.B.* (2009) 9 Cal.5th 989, 996.) We do not consider the credibility of the witnesses or reweigh the evidence. (*In re Lana S.* (2012) 207 Cal.App.4th 94, 103.) We must affirm an order that is supported by substantial evidence even if other evidence, or other inferences from the evidence, would have supported a contrary finding. (*In re Manuel G.* (1997) 16 Cal.4th 805, 823.) The fact that reasonable minds may differ as to the appropriate resolution of an issue does not signal an abuse of discretion. (*People v. Clair* (1992) 2 Cal.4th 629, 655.) It is the defendant's burden to establish abuse of discretion. (*People v. Pacheco* (2022) 75 Cal.App.5th 207, 213.)

We see no abuse of discretion here. First, defendant did not object to Canela's e-mail on the basis that it was hearsay or unsworn, and thus has forfeited these objections to the admissibility of the e-mail. (Evid. Code, § 353; *People v. Partida* (2005) 37 Cal.4th 428, 433-434 [" 'we have consistently held that the "defendant's failure to make a timely and specific objection" on the ground asserted on appeal makes that ground not cognizable' "].)

11

Second, we find no abuse of discretion on the basis that Canela's e-mail was not supported by documentation or included only discussion of "non-specific" phone calls. We do not reweigh the evidence or consider Canela's credibility. (*In re Lana S.*, *supra*, 207 Cal.App.4th at p. 103.) Canela's e-mail provided multiple instances of rule violations that supported removing defendant from the HALT program.

Defendant appears to argue that the trial court abused its discretion by not continuing the matter so *the court* could determine whether all, or any of the allegations contained in Canela's e-mail were true. Defendant offers no authority for the proposition that it was the *court's* responsibility to independently investigate the veracity of Canela's e-mail.

Similarly, defendant observes that he made a statement at the hearing, and that neither the trial court nor the prosecutor asked him to speak about the rule violations contained in Canela's e-mail. But the issue before us is whether Canela's e-mail constituted substantial evidence supporting defendant's removal from the program. It did. Moreover, we note that while neither the prosecutor nor the court asked defendant to verify the statements made in Canela's e-mail, nor did defendant seek to refute them.

Third, the trial court did not abuse its discretion on the basis that other evidence might have supported a contrary finding. (*In re Lana S.*, *supra*, 207 Cal.App.4th at p. 103; *In re Manuel G.*, *supra*, 16 Cal.4th at p. 823.) While the Rohrer report concluded defendant's symptoms "should" improve with treatment modifications, and defendant presented evidence that he had completed some classes and had complied with rules in other circumstances, that evidence does not refute the substantial evidence demonstrating that defendant had committed multiple rule violations justifying his removal from the program. Defendant has failed to demonstrate an abuse of discretion.

Finally, regarding the due process claim, defendant did not object in the trial court to the proceedings on due process or fundamental fairness grounds, and therefore those claims are not preserved for appeal. (Evid. Code, § 353; *People v. Huggins* (2006) 38

12

Cal.4th 175, 236 [forfeited due process claim by failing to object]; *People v. Earp* (1999) 20 Cal.4th 826, 884; *People v. Hines* (1997) 15 Cal.4th 997, 1035.)

**DISPOSITION**

The judgment is affirmed.


/s/
_____
Duarte, J.

We concur:


/s/
_____
Earl, P. J.


/s/
_____
Wiseman, J.*

_____

* Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.