Filed 7/25/13  In re Omar M. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re OMAR M., a Person Coming Under the Juvenile Court Law. | |
| | D058034 |
| THE PEOPLE, | |
| Plaintiff and Respondent, | (Super. Ct. No. J225961) |
| v. | |
| OMAR M., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Carlos O. Armour, Judge.  Affirmed.

Elisabeth A. Bowman, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Barry Carlton and Scott C. Taylor, Deputy Attorneys General, for Plaintiff and Respondent.

Respondent filed a two-count petition against Omar M. pursuant to Welfare and Institutions Code, section 602. Following the denial of Omar's motion to suppress evidence (Welf. & Inst. Code, § 701.1), he entered a negotiated admission to one of the counts, carrying a concealed dirk or dagger (Pen. Code, former § 12020, subd. (a)(4)), a misdemeanor (Pen. Code, § 17, subd. (b)(4)). The court dismissed the remaining count, sustained the petition, adjudged Omar a ward, placed him on probation and detained him in his brother's home. Omar appeals, contending he was unlawfully detained and the court erred in denying his suppression motion. (Welf. & Inst. Code, § 800, subd. (a).) We agree.

BACKGROUND

Viewing the evidence in a light favorable to the juvenile court's ruling (*In re Cody S.* (2004) 121 Cal.App.4th 86, 90), the following occurred:

At about 8:00 p.m. on April 23, 2010, as it was just getting dark, uniformed San Diego County Deputy Sheriff Todd Baker was driving his patrol car eastbound near West Mission Road in San Marcos. He saw four young men walking westbound, in front of him and on the same side of the road. Baker was familiar with only one of the individuals, Javier H., who associated with Varrio San Marcos gang members and had previously told Baker that he was affiliated with that gang. The remaining members of the group were 16-year-old Omar, Jose M. and Pedro A. The four youths were wearing baggy clothing, and Jose was wearing a Chargers shirt, an item of clothing worn by Varrio San Marcos gang members. A gang injunction forbade members of that gang from wearing Chargers clothing and associating with other gang members. Baker had no

2

information that any of the four had been involved in a crime, were Varrio San Marcos gang members or were covered by the gang injunction, but he thought they "could be" members of that gang and associating with each other in violation of the injunction. None of the four were threatening in any way.

Baker quickly pulled over to the side of the road, right next to the young men, and parked in front of them. He got out of his patrol car and, being "just curious," asked them where they were going (or where they had been). The youths immediately stopped and all said they were going home.

Baker then asked, "Hey, can I talk to you?" The young men said, "Yes." Since there were four of them, Baker asked if they would sit on the curb. Baker talked to the youths for one or two minutes, while they sat on the curb and while he waited for cover units to arrive. Baker testified that during that time, he "was probably talking to Javier" and he "usually [asked] people if they're on parole or probation, things of that nature." Baker did not touch any of the individuals. None of them indicated they wanted to leave. They were all cooperative. Throughout the encounter, Baker spoke in a normal tone of voice.

For his own safety, Baker believed he needed to pat down the four because, from his training and experience, he knew gang members carried weapons and he thought there might be weapons under their baggy clothing. An additional factor was Javier's previous statement of affiliation with the Varrio San Marcos gang. Omar's presence with Javier led Baker to believe that Omar might be armed.

Before starting a pat down, Baker stood with "half [his] body . . . behind and to the side" of the subject and placed one hand on the subject, whose hands were behind his back. At that point, Baker always asked, "Is there anything illegal on you? Anything going to stick me or poke me?"

When two more deputies and a police officer arrived, Baker asked Javier to step off the curb so Baker could pat him down for weapons. The pat down revealed no weapons, and Baker asked Javier to resume his seat on the curb. Baker patted down Jose and Pedro according to the same procedure. The record does not disclose whether Baker found any weapons on their persons.

Omar stood up. Baker stood by him as described above and asked him if he had anything illegal, anything that would stick or poke Baker or any weapons. Omar said he had a knife in his right front pocket. Baker patted that pocket and "felt an approximately five-inch hard object, which could have been the knife." Baker reached in Omar's pocket and removed the object which was, in fact, a knife.

Neither Baker nor the other officers ever told the four they were not free to leave.

DISCUSSION

In reviewing the denial of a suppression motion, " 'we defer to the superior court's express and implied factual findings if they are supported by substantial evidence, [but] we exercise our independent judgment in determining the legality of a search on the facts so found. [Citations.]' [Citation.]" (*People v. Lomax* (2010) 49 Cal.4th 530, 563.)

"[C]onsensual encounters . . . result in no restraint of liberty whatsoever . . . ." (*In re Manuel G.* (1997) 16 Cal.4th 805, 821.) "[L]aw enforcement officers do not violate

4

the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, [and] by putting questions to him if the person is willing to listen . . . ." (*Florida v. Royer* (1983) 460 U.S. 491, 497.) " '[A] person has been "seized" within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.' " (*California v. Hodari D.* (1991) 499 U.S. 621, 627-628, quoting *United States v. Mendenhall* (1980) 446 U.S. 544, 554.) "As long as a reasonable person would feel free to disregard the police and go about his or her business, the encounter is consensual and no reasonable suspicion is required on the part of the officer." (*In re Manuel G.*, at p. 821.)

Before the cover units arrived, the encounter between Baker and Omar was consensual. Baker's remarks were questions, not commands. He did not raise his voice. He did not touch Omar. Baker did not tell Omar he was not free to leave. There is no evidence Baker displayed a weapon or blocked Omar's way. Omar voluntarily answered Baker's questions. There is no evidence Omar acted involuntarily in sitting on the curb.

Once the cover units arrived and the pat downs began, a reasonable person would not have felt free to leave. (*Florida v. Bostick* (1991) 501 U.S. 429, 439.) Omar was detained, and the detention was justified. " 'A detention is reasonable under the Fourth Amendment when the detaining officer can point to specific articulable facts that, considered in light of the totality of the circumstances, provide some objective manifestation that the person detained may be involved in criminal activity.' [Citation.]" (*People v. Hester* (2004) 119 Cal.App.4th 376, 386.) Although the mere possibility of

5

gang membership does not justify a detention (*id.* at p. 392), here there was more. Jose was wearing the Chargers apparel favored by the Varrio San Marcos gang. Baker reasonably believed Javier was affiliated with that gang. An injunction prohibited members from wearing Chargers clothing and associating with other gang members. Baker knew gang members carried weapons. Omar and his companions were wearing baggy clothing that could have concealed weapons. These facts entitled Baker to ensure his safety by patting down the four youths. In preparation for the pat down, Baker acted reasonably in asking Omar if he had any weapons. When Omar said yes, Baker was justified in removing the knife from Omar's pocket.

The court properly denied the suppression motion.

## DISPOSITION

The order denying the suppression motion is affirmed.

O'ROURKE, J.

I CONCUR:

IRION, J.

6

MCINTYRE, J.

I dissent.

The majority concludes Omar was not detained until cover units arrived at the scene because "[t]here is no evidence Omar acted involuntarily in sitting on the curb." However, the test is not if there was evidence of whether Omar acted involuntarily, but rather whether a reasonable person would have felt free to leave under the circumstances. (*Florida v. Royer* (1983) 460 U.S. 491, 497.) Under that test, I conclude Omar was detained as soon as Officer Baker asked him and the others to sit on the curb. Officer Baker, who was in uniform, had quickly pulled over his patrol car, right next to the young men, and parked in front of them. While Omar consented to talk to the officer, he did not consent to sit on the curb to await the arrival of backup units. No reasonable person in this circumstance would have felt free to get up and leave the area or otherwise terminate the encounter. Omar's detention continued when other officers arrived and Officer Baker patted down all four young men. Omar did not consent to the pat down, which included Officer Baker placing his hand on Omar, whose hands were behind his back.

"'A detention is reasonable under the Fourth Amendment when the detaining officer can point to specific articulable facts that, considered in light of the totality of the circumstances, provide some objective manifestation that the person detained may be involved in criminal activity.' [Citation.]" (*People v. Hester* (2004) 119 Cal.App.4th 376, 386.) Here, the detention was not reasonable. The majority

concludes there were more facts here, i.e., that one of the other young men was associated with a gang, another wore Charger colors associated with that gang and all four young men were wearing baggy clothing. In my view, it is a stretch for the majority to use these facts to justify the detention because none of the facts, individually or collectively, suggest that the young men were involved in a crime that had occurred or was occurring. I submit the facts in this case were insufficient to meet the standard of "'specific articulable facts that, considered in light of the totality of the circumstances, provide some objective manifestation that the person detained may be involved in criminal activity.' [Citation.]" (*Ibid.*) Thus, the search was the result of an improper detention. I would reverse and direct the trial court to grant the suppression motion.

MCINTYRE, Acting P. J.

2