Filed 6/26/26  P. v. Guerra CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Appellant,<br><br>        v.<br><br>TONY GUERRA,<br><br>    Defendant and Respondent. | F089861<br><br>(Super. Ct. No. F19907205)<br><br>**MODIFICATION OF OPINION**<br>[NO CHANGE IN JUDGMENT] |

**THE COURT:**

On the court's own motion, it is ordered that the following modification be made to the opinion filed herein on June 2, 2026:

1.  Delete the text, "Robert Mangano, Judge" from the caption and replace it with the following text:  "Francine Zepeda, Judge."

There is no change in the judgment.

                                                        LEVY, A. P. J.

WE CONCUR:


SNAUFFER, J.


DE SANTOS, J.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FIFTH APPELLATE DISTRICT**

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Appellant,<br><br>  v.<br><br>TONY GUERRA,<br><br>  Defendant and Respondent. | F089861<br><br>(Super. Ct. No. F19907205)<br><br>**OPINION** |

**THE COURT**[*]

APPEAL from a judgment of the Superior Court of Fresno County.  Robert Mangano, Judge.

Stephanie L. Gunther, under appointment by the Court of Appeal, for Defendant and Respondent.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Kimberley A. Donohue, Assistant Attorney General, Ivan P. Marrs, Charlotte Woodfork, and Galen N. Farris, Deputy Attorneys General, for Plaintiff and Appellant.

-ooOoo-

---

[*]     Before Levy, Acting P. J., Snauffer, J. and DeSantos, J.

On March 26, 2025, the trial court granted defendant Tony Guerra's motion to suppress evidence and dismissed the case. The People appealed, arguing that the court erred because the law enforcement officer's initial contact with defendant was a consensual encounter that did not trigger scrutiny under the Fourth Amendment to the United States Constitution. We affirm.

## PROCEDURAL HISTORY AND BACKGROUND

### I.    The Charges

On October 23, 2019, the District Attorney of Fresno County filed a complaint charging defendant with possession of a controlled substance while armed with a firearm (Health & Saf. Code, § 11370.1, subd. (a); count 1); possession of a firearm by a felon (Pen. Code,[1] § 29800, subd. (a)(1); counts 2, 3 & 4); possession of ammunition by a person prohibited from owning a firearm (§ 30305, subd. (a)(1); count 5); and possession of a switchblade in a vehicle (§ 21510, subd. (a); count 6).

### II.    The Motion to Suppress

On March 18, 2025, defendant filed a motion to suppress evidence under section 1538.5. According to defendant, he was in a parked vehicle when a sheriff's deputy detained him without reasonable suspicion that he was engaged in criminal activity. At the time, he was on probation with search and seizure terms. The vehicle was searched, and deputies found loaded firearms, ammunition, a switch blade, and methamphetamine. Defendant asked the trial court to suppress all evidence in the case because it was obtained as a result of the illegal detention.

The prosecutor opposed the motion. The prosecutor did not contend that the deputy had reasonable suspicion to detain defendant. Instead, the prosecutor argued that defendant's Fourth Amendment rights were not violated because the contact started as a

---

[1]    Undesignated statutory references are to the Penal Code.

consensual encounter, and the search was not conducted until after defendant told the deputy that he was on probation with search and seizure terms.

## III.    The Evidentiary Hearing

On March 26, 2025, the trial court held an evidentiary hearing on the motion to suppress.  The arresting deputy, Joseph Cross, testified at the hearing.

On October 21, 2019, Cross was a patrol deputy at the Fresno County Sheriff's Office.  At approximately 10:00 p.m., he was dispatched to a convenience store parking lot because a witness had reported a suspicious vehicle.  He located the vehicle and parked near it.  He did not block the vehicle from leaving or activate his red and blue lights.

Cross approached the vehicle.  Defendant was asleep inside.  Cross knocked on the driver's side window to wake him up.  When he knocked, he was positioned in such a way that he did not block the door from opening.  Cross exhibited for the trial court the movement he made.

After defendant woke up, Cross told defendant that he was a sheriff's deputy and that he was responding to a call for service.  Defendant identified himself and told Cross that he was on felony probation with search and seizure terms.

Cross confirmed that defendant was on active probation with search and seizure terms, and defendant's vehicle was searched.

## IV.    The Trial Court's Ruling

After receiving evidence and hearing argument, the trial court granted the motion to suppress.  It found that Cross detained defendant without reasonable suspicion.  In analyzing whether defendant felt free to leave the encounter, the court found, inter alia:

> "[Defendant] [was] asleep, according to [Cross].  And I find it a reach—he did get up … Cross did get up and show us how he knocked on the window.  Okay.  I felt that he really had to stretch out of the way in order for this defendant to actually open the door.  So I didn't really—I

3.

didn't find much credence in that, that he made sure he could go out the door."

The trial court suppressed all evidence obtained as a result of the detention and dismissed the case on its own motion.

## V. The Appeal

On May 22, 2025, the People timely filed a notice of appeal. On appeal, the People argue the trial court erred by granting the motion to suppress because Cross's initial contact with defendant was a consensual encounter, not a detention.

## DISCUSSION

## I. Applicable Law and Standard of Review

"The Fourth Amendment to the United States Constitution protects the 'right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.' " (*People v. McWilliams* (2023) 14 Cal.5th 429, 437, fn. omitted.) However, "[c]onsensual encounters do not trigger Fourth Amendment scrutiny. [Citation.] Unlike detentions, they require no articulable suspicion that the person has committed or is about to commit a crime." (*In re Manuel G.* (1997) 16 Cal.4th 805, 821.)

" ' "[C]onsensual encounters" [citation], … are those police-individual interactions which result in no restraint of an individual's liberty whatsoever—i.e., no "seizure," however minimal—and which may properly be initiated by police officers even if they lack any "objective justification." ' [Citation.] The Supreme Court has held 'that the Fourth Amendment permits police officers to approach individuals at random in airport lobbies and other public places to ask them questions … so long as a reasonable person would understand that he or she could refuse to cooperate.' [Citation.] 'The citizen participant in a consensual encounter may leave, refuse to answer questions or decline to act in the manner requested by the authorities.' [Citation.] ' "Only when the officer, by means of physical force or show of authority, in some manner restrains the individual's liberty, does a seizure occur." ' " (*People v. Paul* (2024) 99 Cal.App.5th 832,

4.

838 (*Paul*).) " ' " "[I]n order to determine whether a particular encounter constitutes a seizure, a court must consider all the circumstances surrounding the encounter to determine whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter.' [Citation.] This test assesses the coercive effect of police conduct as a whole, rather than emphasizing particular details of that conduct in isolation." ' " (*Id*. at p. 838.)

" 'The test for the existence of a show of authority is an objective one and does not take into account the perceptions of the particular person involved. [Citation.] The test is "not whether the citizen perceived that he was being ordered to restrict his movement, but whether the officer's words and actions would have conveyed that to a reasonable person." ' [Citation.] 'This includes an examination of both an officer's verbal *and* nonverbal actions in order to "assess[] the coercive effect of police conduct as a whole, rather than emphasizing particular details of that conduct in isolation." ' " (*Paul*, *supra*, 99 Cal.App.5th at pp. 838–839.)

"In ruling on a motion to suppress, the trial court must find the historical facts, select the rule of law, and apply it to the facts in order to determine whether the law as applied has been violated. [Citation.] We review the court's resolution of the factual inquiry under the deferential substantial evidence standard. The ruling on whether the applicable law applies to the facts is a mixed question of law and fact that is subject to independent review." (*People v. Ramos* (2004) 34 Cal.4th 494, 505.)

## II. Analysis

According to the People, "none of the 'coercive hallmarks of a detention' were present" here. The People argue this case is similar to *People v. Tacardon* (2022) 14 Cal.5th 235 (*Tacardon*). In *Tacardon*, a law enforcement officer drove past a legally parked vehicle which had smoke coming from the windows. (*Id*. at pp. 238–239.) As the officer drove past, he saw three people inside the vehicle and made eye contact with them. (*Id*. at p. 239.) He "made a U-turn, parked about 15 to 20 feet behind the

[vehicle], and turned on his spotlight. He did not activate his siren or emergency lights or issue any commands to the car's occupants. He sat in his patrol car for 15 to 20 seconds while he informed dispatch of his location. He then approached the [vehicle] at a walking pace. He did not draw a weapon." (*Ibid*.). The court held that when the officer began approaching the vehicle on foot, the individual in the driver's seat (the defendant) was not detained because the officer's "conduct up to this point conveyed none of the coercive hallmarks of a detention." (*Id*. at p. 247.) The court declined to decide whether the contact became a detention at a later point in time. (*Id*. at pp. 255–256.)

Defendant, on the other hand, argues that this case is similar to *Paul*, *supra*, 99 Cal.App.5th 832. In *Paul*, a law enforcement officer saw a parked vehicle with its lights on. (*Id*. at pp. 835–837.) The officer stopped his patrol car alongside the vehicle, and his partner illuminated the vehicle with a flashlight. (*Ibid*.) There was one occupant (the defendant), who was on the phone with a family member. (*Ibid*.) The officer then backed up and parked in the middle of the street, with the headlights on. (*Ibid.*) The officer approached the driver's side door on foot, while his partner simultaneously approached the passenger's side door. (*Ibid*.) Both illuminated the vehicle with a flashlight. (*Ibid*.) After a brief conversation, the defendant admitted he was on parole. (*Ibid*.)

The court held that the defendant was detained prior to his conversation with the officers based on several factors. (*Paul*, *supra*, 99 Cal.App.5th at p. 839.) First, the officers positioned their bodies in such a way that the defendant could not exit the vehicle through either door or drive away. (*Id*. at pp. 839–840.) Second, the officers, who approached from different sides of the vehicle, shined their flashlights into the vehicle's windows from close range. (*Id*. at pp. 839–840.) Finally, "the officers approached [the defendant] while he was talking on his phone inside a legally parked vehicle with the windows rolled up. [The defendant] could not reasonably decline to interact with the officers without suspending or ending his phone conversation and at least engaging in a

brief conversation with them. The circumstances would lead an objectively reasonable person [to] believe that the officers required their attention and that they could not simply depart." (*Id*. at p. 840.)

Neither case is directly on point (nor could we find a case that is). *Tacardon* was focused on conduct that occurred, at the latest, as the officer began to approach the defendant's vehicle. (*Tacardon*, *supra*, 14 Cal.5th at p. 247.) And if we also focused only on conduct that occurred as Cross began to approach defendant's vehicle, we would agree with the People that no detention occurred. Cross did not block defendant's vehicle with his vehicle, nor did he activate his emergency lights (or even a spotlight). Also, he did not rush toward defendant's vehicle or draw his gun. However, as discussed below, relevant conduct occurred after Cross reached defendant's vehicle, and *Tacardon* is not on point as to the effect of that conduct.

As to *Paul*, it is not directly on point because that case involved two officers who approached from different sides of the defendant's vehicle and who both shined their flashlights into the vehicle. (*Paul*, *supra*, 99 Cal.App.5th at p. 835.) Here, there was only one officer, and he did not use a flashlight.

However, *Paul* does have relevant similarities to our case. First, as in *Paul*, Cross prevented defendant from leaving the vehicle by blocking the door with his body.[2] Second, while defendant was not on a phone call, he was asleep in his legally parked vehicle, at night, with his window up. Cross subsequently woke defendant from his slumber by knocking on the window. Given this factual background, like in *Paul*, "[t]he

_____

[2]     The People repeatedly refer to Cross's testimony that he was not blocking the door as a reason to find defendant was not detained. However, the trial court specifically found that this testimony, which included Cross exhibiting for the court how he knocked on the window, was not credible. The People do not argue this finding is unsupported by substantial evidence or otherwise explain why we should reject the finding. Accordingly, we defer to the court's factual finding. (*People v. Houston* (2012) 54 Cal.4th 1186, 1215 [under the substantial evidence standard, " '[w]e do not reweigh evidence or reevaluate a witness's credibility' "].)

7.

circumstances would lead an objectively reasonable person [to] believe that the officer[] required [his] attention and that [he] could not simply depart." (*Paul*, *supra*, 99 Cal.App.5th at p. 840.)

Moreover, Cross was admittedly conducting an investigation into a report of a suspicious vehicle.[3] This, in and of itself, is not relevant. (*Tacardon*, *supra*, 14 Cal.5th at p. 242.) However, Cross also told defendant he was "responding to a call for service." This is relevant. Given that Cross had just woken defendant from his slumber, and that defendant did not place the call for service, Cross's statement would have placed an objectively reasonable person on alert that Cross might be investigating him specifically, which would lead that reasonable person to conclude that Cross required his attention and he could not simply depart. (See, e.g., *Wilson v. Superior Court* (1983) 34 Cal.3d 777, 790–791; *People v. Linn* (2015) 241 Cal.App.4th 46, 58, 65.)

Accordingly, while this is a close case, given the deferential standard of review we apply to the trial court's factual findings, that Cross woke defendant from his slumber while he was legally parked with his window up, that Cross was blocking the vehicle's door when he woke defendant, and that Cross's statement would have placed an objectively reasonable person on alert that Cross might be investigating him specifically, we affirm the trial court's ruling.

## DISPOSITION

The judgment is affirmed.

---

**3** The People appear to assert that Cross may have been conducting a wellness check, not an investigation. However, this assertion is not supported by evidence in the record. In fact, Cross specifically stated that he "knocked on the window due to that being the only vehicle that matched the description [of the suspicious vehicle], and being advised that the vehicle was still currently there."